In the

# United States Court of Appeals

## For the Seventh Circuit

No. 10-1750

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

MARTY TAYLOR,

*Defendant-Appellant*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 09-cr-119-bbc-01—**Barbara B. Crabb**, *Judge*.

ARGUED AUGUST 4, 2010—DECIDED SEPTEMBER 2, 2010

Before POSNER, ROVNER, and HAMILTON, *Circuit Judges*.

POSNER, *Circuit Judge*. The defendant was charged, along with Arlandis Issac, with armed bank robbery in violation of 18 U.S.C. §§ 2113(a), (d). He pleaded guilty and was sentenced to 110 months in prison. (Issac, not an appellant in this case, also pleaded guilty and was sentenced to 168 months.) The question presented by the appeal is whether the district judge was correct to add two levels to the defendant's base offense level

pursuant to section 2B3.1(b)(4)(B) of the federal sentencing guidelines. That section requires the enhancement if a person is "physically restrained to facilitate the commission of the offense [of robbery] or to facilitate escape." The term "physically restrained" is defined as "the forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1, application note 1(K). The enhancement raised the defendant's guidelines sentencing range from 92-115 months to 110-137 months. (These ranges include a six-level increase above the defendant's base offense level because he had used a gun in the robbery.) The judge thus gave him a sentence that was at the bottom of the range that the enhancement for physical restraining lifted him into and below the maximum without the enhancement.

The defendant and Issac had entered the bank with two other men. With the other two guarding the lobby, the defendant ordered a teller at gunpoint to open her money drawer while Issac went to the vault at the back of the bank where another teller was standing, whom Issac ordered at gunpoint to get down on her knees. He tugged her back to a standing position and with one hand holding a gun pointed at her back and the other placed on the back of her neck or head led her from the vault to her teller's position, shoved her, face down, to the floor, and held her there. The robbers looted the tellers' money drawers and fled.

The enhancement for physically restraining the second teller in order to facilitate the robbery was based not on anything the defendant had done but rather on Issac's

conduct, which the judge deemed "relevant conduct" of the defendant. See U.S.S.G. § 1B1.3(a)(1)(B). That ruling is not questioned but the judge's reasoning in imposing the enhancement is. She said: "I'm not at all convinced that being moved at the point of a gun is all that different in impact, effect on the victim[,] as being tied, bound or locked up. The person is physically restrained from moving in any direction but the direction in which the robber wants her to go. Now it's true the gun was not pointed directly at her face . . ., but the gun was there." The judge added that Issac had "pushed [the teller] to the ground and pushed [her] in the small of her back to make sure she was on the ground . . . . [H]e walked her into the other room while holding a firearm. I think that kind of activity, moving from place to place . . . where the firearm is being held clearly to be used on you if you make the wrong move, . . . complies with the definition of forcible restraint of a victim."

Even if Issac's conduct didn't satisfy the guideline definition of physical restraint, if the judge reasonably thought it as evil as, say, handcuffing the teller and locking her in the vault—conduct that clearly would satisfy the definition—she could increase the defendant's sentence without worrying about the definition. A sentencing judge in this post-*Booker* era is entitled to enhance a sentence whether or not the technical requirements of the guidelines are met. But since the judge based her sentence instead on her understanding of the physical-restraint guideline we must decide whether that understanding was correct.

Had she based the enhancement not on Issac's having pointed his gun at the teller to control her movement but on his having shoved and dragged or pushed her to the floor and held her down, there would be no issue for appeal; that would be "physically restraining" in even the narrowest sense of the term. *United States v. Old Chief*, 571 F.3d 898, 901 (9th Cir. 2009); *United States v. Ossai*, 485 F.3d 25, 32 (1st Cir. 2007); *United States v. Foppe*, 993 F.2d 1444, 1448, 1452-53 (9th Cir. 1993). But instead she emphasized the use of the gun to force compliance with Issac's command that the teller go from the vault to the teller area. The defendant argues that threatening a person with a gun is not "physically restraining" even if the purpose is to compel a person to move or not move as the robber commands.

He claims that *Begay v. United States*, 553 U.S. 137 (2008), holds that a statute or regulation that provides a list of examples to define a crime cannot be applied to any behavior that is not relevantly identical to the examples. In the case of the "physically restraining" sentencing guideline the list is "tied, bound, or locked up," and the defendant argues that since all these are forms of physically preventing or limiting movement, threatening a person cannot fit within the guideline. But he flinches when it comes to a robber's spraying mace on a person to facilitate the robber's escape, as in *United States v. Robinson*, 20 F.3d 270, 279 (7th Cir. 1994), which held the act to be a form of "physically restraining" the victim. He thinks *Robinson* may survive *Begay*; he says that "spraying mace is arguably consistent with being 'tied, bound or locked up' insofar as it creates a restraint

that stays in place after the robber has left." But that can't be right; it would mean that if the robber had handcuffed a teller but removed the handcuffs on his way out (maybe he wanted them for his next bank robbery), he could not be given the sentencing enhancement for physically restraining a person.

What is true is that a statutory list of examples of conduct that violates the statute can be a clue to the statute's intended scope; that is the core of good sense in the "canon of construction" known as *eiusdem generis* (Latin for "of the same kind," in law Latin usually spelled *ejusdem generis*). The examples are a substitute for or supplement to a definition. *Begay* was interpreting a statute that defined as a violent felony an act or series of acts that constitute "burglary, arson, or extortion, involves use of explosives, or *otherwise* involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii) (emphasis added). The examples provided help in interpreting "conduct that presents a serious potential risk of physical injury to another." The Court held that driving under the influence, although a dangerous activity, was not within the statute's scope because it lacked the essential character of the listed crimes, which the Court described as "purposeful, violent, and aggressive" conduct. 553 U.S. at 144-45.

The essential character of conduct that is subject to the physical-restraint guideline (which defines "physically restraining" only tautologically, as "forcible restraint") is depriving a person of his freedom of physical movement,

*United States v. Old Chief, supra*, 571 F.3d at 901; *United States v. Plenty*, 335 F.3d 732, 736 (8th Cir. 2003); *United States v. Checora*, 175 F.3d 782, 791 (10th Cir. 1999), and this can be accomplished by means other than creating a physical barrier to movement. Hitting a person over the head with a two-by-four will make him incapable, for a time at least, of any physical movement. But it won't create a physical barrier, as a locked door does; nothing but his being unconscious prevents him from moving. But so what? There is a difference, from a penal standpoint, between deliberately burning down a house and driving while drunk; but what is the penologically relevant difference between locking a teller in a vault, on the one hand, and knocking her senseless (if we ignore the injury in the latter case, which would earn the assailant an additional enhancement, U.S.S.G. § 2B3.1(b)(3))—or pointing a gun at her—on the other hand?

The difference, though it has penological relevance only by virtue of the structure of the guidelines, is the six-level enhancement that the defendant received for using a gun. When he pointed his gun at a teller and told her to open her money drawer, he effectively prevented her from responding that she'd be happy to do that in a moment but first she'd like to go outside for a smoke. But it is not suggested that since he prevented her from moving, as she doubtless would have wanted to do, he should get the two-level physical-restraint enhancement on top of the six-level enhancement for use of a gun. For that would make the enhancement available in every robbery case, since the robber must

always make his victim stay still while being robbed. But a characteristic shared by all instances of a crime is reflected in the base offense level for the crime and therefore is unavailable for use as an enhancement. *United States v. Rodgers*, 610 F.3d 975, 978 (7th Cir. 2010); *United States v. Senn*, 129 F.3d 886, 897 (7th Cir. 1997); *United States v. Reese*, 2 F.3d 870, 895 (9th Cir. 1993); *United States v. Butt*, 955 F.2d 77, 88-89 (1st Cir. 1992). That would be double counting. What then is the difference between the defendant's use of the gun and Issac's use, the latter being the basis for the "physically restraining" enhancement?

We examine that question through the lens provided by two of our previous decisions. The first, *United States v. Doubet*, 969 F.2d 341, 346 (7th Cir. 1992), abrogated on unrelated grounds by *United States v. Dunnigan*, 507 U.S. 87 (1993), states that "herding victims into a defined area" is not "physically restraining" them if all that's involved is "simply directing them to one side of the room and admonishing them not to move . . . . Were it otherwise, enhancement would be warranted virtually every time an armed robber entered a bank, for a threat not to move is implicit in the very nature of armed robbery." (Nor does such "herding" amount to "abduction," *United States v. Eubanks*, 593 F.3d 645, 652-54 (7th Cir. 2010), which when done to facilitate the offense or escape gives rise to an additional four-level enhancement. U.S.S.G. § 2B3.1(b)(4)(A).) Yet in *Doubet* we upheld the enhancement because the defendant had ordered the tellers to go into a bathroom and told them that if they tried to leave he'd blow their heads off—a

credible threat because he was carrying a sawed-off shotgun. This was "herding," but went a step beyond "simply directing."

In the second case, *United States v. Carter*, 410 F.3d 942, 954 (7th Cir. 2005), after repeating the qualification in *Doubet* we upheld the physical-restraint enhancement where the defendant, "in the immediate presence of [a teller], focused his gun on her and then, sustaining that focus, moved her out of the bank's vault to her drawer against her will." That is like our case (minus the physical contact); it goes beyond *Doubet* by not requiring confinement.

*Carter* governs our case. It accords with the decisions in all the comparable cases that we've found in the other courts of appeals, *United States v. Stevens*, 580 F.3d 718 (8th Cir. 2009); *United States v. Miera*, 539 F.3d 1232, 1235-36 (10th Cir. 2008); *United States v. Ossai, supra*, 485 F.3d at 32; *United States v. Wilson*, 198 F.3d 467, 472 (4th Cir. 1999); *United States v. Copenhaver*, 185 F.3d 178, 182-83 (3d Cir. 1999); *United States v. Nelson*, 137 F.3d 1094, 1112 (9th Cir. 1998); *United States v. Jones*, 32 F.3d 1512, 1519 (11th Cir. 1994), and we consider it sound and decline the defendant's invitation to overrule it. Whether a pointed gun is used to move a person into an unlocked room and keep him there, or used to move a person from one part of the robbery scene to another, the person's freedom of movement is restrained as effectively as by shoving or dragging him into a room and locking the door. The type of conduct found in this case is a feature of many robberies but not all; goes a step,

albeit a modest one, beyond the mere aiming of a gun at a stationary robbery victim (*United States v. Miera*, *supra*, 539 F.3d at 1236, gave, as an example of a bank robber who would not be subject to the enhancement, one who "simply walked up to the teller's station with a gun visible in his waistband and demanded money"); and provides an *a fortiori* justification for the modest sentencing enhancement in this case—for remember that the sentence the judge imposed was within what would have been the guidelines range without the enhancement. The distinctions among the cases of restraint by gun are so fine, however, that sentencing judges might be better advised to assess a robbery defendant's conduct in such cases without reliance on the physical-restraint guideline, as we said earlier the judge could have done in this case.

One small matter remains to be considered. The judge ordered the defendant to participate in the Inmate Financial Responsibility Program, 28 C.F.R. § 545.10. That was error; participation is voluntary. *United States v. Munoz*, 610 F.3d 989, 997 (7th Cir. 2010); *United States v. Boyd*, 608 F.3d 331, 335 (7th Cir. 2010); *United States v. Lemoine*, 546 F.3d 1042, 1047 (9th Cir. 2008).

The judgment is modified accordingly, and as modified is

AFFIRMED.