PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,

        *Plaintiff-Appellee,*

v.

ELIANER DIMACHE,

        *Defendant-Appellant.*

No. 11-4090

Appeal from the United States District Court
for the District of South Carolina, at Florence.
Terry L. Wooten, District Judge.
(4:10-cr-00714-TLW-1)

Argued: October 28, 2011

Decided: December 7, 2011

Before KEENAN and WYNN, Circuit Judges, and
HAMILTON, Senior Circuit Judge.

Affirmed by published opinion. Senior Judge Hamilton wrote
the opinion, in which Judge Keenan and Judge Wynn joined.

## COUNSEL

**ARGUED:** William Fletcher Nettles, IV, OFFICE OF THE
FEDERAL PUBLIC DEFENDER, Florence, South Carolina,
for Appellant. Alfred William Walker Bethea, Jr., OFFICE
OF THE UNITED STATES ATTORNEY, Florence, South

Carolina, for Appellee. **ON BRIEF:** William N. Nettles, United States Attorney, Columbia, South Carolina, for Appellee.

---

**OPINION**

HAMILTON, Senior Circuit Judge:

The Robbery Guideline provides for a two-level enhancement to a defendant's base offense level "if any person was physically restrained to facilitate the commission of the offense or to facilitate escape." U.S. Sentencing *Guidelines Manual* (USSG) § 2B3.1(b)(4)(B). The issue presented in this appeal is whether the district court erred in sentencing the appellant, Elianer Dimache, when it applied this enhancement to his base offense level. For the reasons stated below, we conclude the district court properly applied the enhancement. Accordingly, we affirm.

I

The facts are not in dispute. On May 2, 2008, at 5:04 p.m., Dimache and an unknown male entered a branch of the First Palmetto Savings Bank in Myrtle Beach, South Carolina. They approached one of the bank tellers and requested change for a $10 dollar bill and a $50 dollar bill. As the bank teller was getting the change, Dimache leaped over the counter, brandished a gun, and stated, "[y]ou know the drill." (J.A. 84). He then directed the bank teller to put the money from her cash drawer into a bag being held by the unknown male.

Dimache pointed the gun at the two other bank tellers present behind the counter and told them to get down on the floor. He warned them to be quiet, stating if they were not, "[y]ou know what will happen." (J.A. 84). After the bank teller put the money into the bag, Dimache demanded that she also get

on the floor and count to 100. Dimache and the unknown male then exited the branch with $1,778.00 in United States currency.

Dimache became a suspect after the bank robbery once forensic comparison analysis revealed that DNA retrieved from a dental overlay recovered at the scene matched Dimache's DNA. Dimache was interviewed by federal law enforcement agents on June 24, 2010 in Miami, Florida. Even though video surveillance evidence linked Dimache to the bank robbery, he denied his involvement in the bank robbery, as well as knowing the unknown male accomplice.

On July 7, 2010, a federal grand jury in the District of South Carolina returned a three-count indictment charging Dimache with: (1) armed bank robbery, 18 U.S.C. § 2113(d); (2) being a felon in possession of a firearm, *id.* § 922(g)(1); and (3) using and carrying a firearm during and in relation to a crime of violence, *id.* § 924(c)(1).[1] Pursuant to a plea agreement, Dimache pled guilty to armed bank robbery.

In preparation for sentencing, a Presentence Investigation Report was prepared by a United States Probation Officer. The probation officer set Dimache's base offense level at 20, USSG § 2B3.1(a). Three enhancements and one downward adjustment were applied by the probation officer to Dimache's base offense level. First, the base offense level was increased two levels because the property of a post office or financial institution was taken, *id.* § 2B3.1(b)(1). Second, a five-level enhancement was applied because a firearm was brandished or possessed, *id.* § 2B3.1(b)(2)(C). Third, a two-level enhancement was applied because the bank tellers were physically restrained to facilitate commission of, or escape from, the bank robbery, *id.* § 2B3.1(b)(4)(B). In the probation officer's opinion, the § 2B3.1(b)(4)(B) enhancement applied

---

[1]Dimache's lengthy criminal history contains several felony convictions from the state of Florida.

because, "[d]uring the course of this robbery, the defendant used a firearm to threaten the victim tellers and force them to lie on the ground, thereby restraining their movements." (J.A. 93). Finally, a two-level downward adjustment was applied for acceptance of responsibility, USSG § 3E1.1(a), resulting in a total offense level of 26. Combined with a Criminal History Category III, Dimache's sentencing range was 78 to 97 months' imprisonment.

Dimache objected to the probation officer's recommendation that the bank tellers were physically restrained under USSG § 2B3.1(b)(4)(B). At sentencing, the district court heard arguments from both sides concerning this objection. After such arguments, the district court overruled the objection to the probation officer's recommendation. In its ruling, the district court focused on the two bank tellers ordered to the floor at gunpoint, stating:

> I find that this defendant was using the gun to restrain these tellers so that they would not interfere with the robbery or so that they would not interfere with the taking of the money. And that gun is, I think, just as effective, if not more effective, in restraining these two tellers as duct tape or some kind of twine or rope would have been as well.

> \* \* \*

> And in this case, the defendant did not just have a gun. He did not just display the gun. He pointed the gun at the other two tellers with the specific intent to restrain them from being involved in some way or fleeing or whatever they would choose to do. But he pointed the gun at them to restrain them. It was forcible restraint of the victims to enable the robbery to take place just like the case that we discussed, the Fourth Circuit case where the individual in the car was held so she could be robbed. I think that was the

[*United States v. *]*Wilson*[, 198 F.3d 467 (4th Cir. 1999)] decision where you have got that kind of physical restraint.

* * *

So, the gun, I believe, was used to restrain them, not just everybody in the bank to get down, but pointed the gun at the two tellers who were behind the counter and by this defendant and the other person in the bank to then have the teller place the money into the bag.

And I find that the fact pattern is consistent with other fact patterns where individuals have been restrained and the enhancement has applied.

(J.A. 58-60).

Following its ruling, the district court heard from counsel, as well as from Dimache, concerning the appropriate sentence. After considering the advisory sentencing range, as well as the factors set forth in 18 U.S.C. § 3553(a), the district court sentenced Dimache to ninety months' imprisonment.[2] Dimache noted a timely appeal.

## II

We review a sentence imposed by the district court under the deferential abuse-of-discretion standard, regardless of whether the sentence imposed is inside, just outside, or significantly outside the Guidelines range. *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008); *see also Gall v. United States*, 552 U.S. 38, 41 (2007). The first step in this review

---

[2]Had the district court sustained Dimache's objection to the USSG § 2B3.1(b)(4)(B) enhancement, Dimache's sentencing range would have been 63 to 78 months, instead of 78 to 97 months.

requires us to inspect the record for procedural reasonableness by ensuring that the district court committed no significant procedural errors, such as failing to calculate or improperly calculating the Guidelines range, failing to consider the 18 U.S.C. § 3553(a) factors, or failing to adequately explain the sentence. *United States v. Boulware*, 604 F.3d 832, 837–38 (4th Cir. 2010). The second step requires us to consider the substantive reasonableness of the sentence imposed, taking into account the totality of the circumstances. *Gall*, 552 U.S. at 51.

Dimache contends that the sentence imposed by the district court is procedurally unreasonable because the district court erred when it enhanced his base offense level two levels under USSG § 2B3.1(b)(4)(B). More specifically, Dimache contends that the two bank tellers ordered to the floor at gunpoint were not physically restrained, because physical restraint requires more than just pointing a gun at a person, ordering them to the floor, and telling them not to move. In response, the government posits that Dimache's conduct warrants the application of the USSG § 2B3.1(b)(4)(B) enhancement, because the gun restrained the freedom of movement of the two bank tellers. According to the government, the gun was just as effective at physically restraining the two bank tellers as twine or duct tape, had such items been used to restrain them.

USSG § 2B3.1(b)(4)(B) requires a two-level enhancement if a person is "physically restrained to facilitate the commission of the offense [of robbery] or to facilitate escape." USSG § 2B3.1(b)(4)(B). "Physically restrained" is defined as "the forcible restraint of the victim such as by being tied, bound, or locked up." *Id.* § 1B1.1, comment. (n.1(K)). The USSG § 2B3.1(b)(4)(B) enhancement is not limited to the examples listed in USSG § 1B1.1(K). *See United States v. Stokley*, 881 F.2d 114, 116 (4th Cir. 1989) ("By use of the words 'such as,' it is apparent that 'being tied, bound, or locked up' are listed by way of example rather than limitation."). "The essential

character of conduct that is subject" to the USSG § 2B3.1(b)(4)(B) enhancement is the deprivation of a person's "freedom of physical movement." *United States v. Taylor*, 620 F.3d 812, 814 (7th Cir. 2010).

Whether a person is physically restrained during the commission of, or escape from, a robbery is not an easy question to answer, especially when a gun is present. Some courts view USSG § 2B3.1(b)(4)(B) narrowly, applying the enhancement only when the defendant uses the gun to restrain the victim through bodily contact or some type of confinement. *See United States v. Parker*, 241 F.3d 1114, 1118-19 (9th Cir. 2001) ("[C]ases holding that a defendant physically restrained his victims usually involve a sustained focus on the restrained person that lasts long enough for the robber to direct the victim into a room or order the victim to walk somewhere. . . . It is therefore likely that Congress meant for something more than briefly pointing a gun at a victim and commanding her once to get down to constitute physical restraint, given that nearly all armed bank robberies will presumably involve such acts."); *United States v. Drew*, 200 F.3d 871, 880 (D.C. Cir. 2000) ("Nevertheless, the phrase 'being tied, bound, or locked up' indicates that physical restraint requires the defendant either to restrain the victim through bodily contact or to confine the victim in some way. . . . The required restraint must, as the language plainly recites, be physical. While [the victim of the attempted murder in this case] no doubt felt restrained by [the defendant], she was not subject to physical restraint, as we interpret the Guideline's use of that phrase. . . . Any other interpretation would effectively add the two-level adjustment to almost any attempted murder because presumably any victim would feel restrained if directed to move at gunpoint.") (internal quotation marks omitted); *United States v. Anglin*, 169 F.3d 154, 164 (2d Cir. 1999) (concluding that "displaying a gun and telling people to get down and not move, without more, is insufficient to trigger the 'physical restraint' enhancement" in sentencing for armed robbery).

Other courts, including our own, view USSG § 2B3.1(b)(4)(B) broadly, applying it when the defendant points the gun at the victim, thereby restricting the victim's movements and ensuring the victim's compliance with the desires of the defendant. *See Wilson*, 198 F.3d at 472 (holding that victim physically restrained by being prevented at gunpoint from leaving car until the defendants took her money and got control of car); *see also United States v. Wallace*, 461 F.3d 15, 33 (1st Cir. 2006) (applying the USSG § 2B3.1(b)(4)(B) enhancement, in part, because the defendants "rendered the victims physically immobile by keeping their guns pointed directly at each victim in close range"); *United States v. Fisher*, 132 F.3d 1327, 1329-30 (10th Cir. 1997) ("Physical restraint is not limited to physical touching of the victim. . . . Rather, physical restraint occurs whenever a victim is specifically prevented at gunpoint from moving, thereby facilitating the crime. . . . Keeping someone from doing something is inherent within the concept of restraint, and in this case one coconspirator deliberately kept the security guard at bay by pointing a gun directly at his head while two others looted the teller counter.").

At least one other court seems to take a middle ground, requiring more than simply pointing a gun at a victim to restrain the victim's movements, but less than requiring either physical contact or confinement. *See Taylor*, 620 F.3d at 815 (holding that USSG § 2B3.1(b)(4)(B) enhancement properly applied where bank teller was moved from the bank vault to the bank teller counter, while noting that moving a bank teller from one area of the bank to another is a feature of many robberies but not all and that such conduct "goes a step, albeit a modest one, beyond the mere aiming of a gun at a stationary robbery victim").

In our decision in *Wilson*, Wilson's codefendant, Gilbert, approached a woman while she was in her car, pointed the gun at her, and directed her to get out of her car. 198 F.3d at 469. The woman replied that she could not comply with Gil-

bert's command because her baby was in the car. *Id.* In response, Gilbert instructed the woman to grab her baby and get out of the car. *Id.* After the woman complied with this request, Wilson and Gilbert entered the car and drove off. *Id.*

Three days later, another woman was driving her car when she saw Wilson and Gilbert waving for her to stop. *Id.* After the woman stopped the car, Wilson and Gilbert entered the car, under the ruse that they needed a ride. *Id.* After five to ten minutes of travel, Gilbert placed a gun to the side of the woman's head and told her to pull over, which the woman did. *Id.* Wilson told the woman to get out of the car and hand over all the money she had. *Id.* The woman then gave Wilson and Gilbert all of the money in her purse and exited the car, after which Wilson and Gilbert drove off. *Id.*

For reasons unknown, Wilson and Gilbert were charged by a federal grand jury with several offenses arising from the second carjacking, but not the first. Gilbert pled guilty and testified at Wilson's trial. *Id.* Wilson was convicted of carjacking and two additional charges. *Id.* In sentencing Wilson, the district court applied the USSG § 2B3.1(b)(4)(B) enhancement for Wilson's conduct in the second carjacking, because

> there was a restraint when the gun was pulled, the car was stopped, she was held long enough to have taken her money, and then forced out of the car. So for a period of time, albeit short, she was physically restrained, and then put out of the car [. . .] in an effort to facilitate the offense of taking the car.

*Wilson*, 198 F.3d at 471 (citation and internal quotation marks omitted).

On appeal to this court, Wilson argued that the district court erred when it applied the USSG § 2B3.1(b)(4)(B) enhancement to his base offense level, because there was insufficient evidence demonstrating that the woman in the

second carjacking was physically restrained. *Wilson*, 198 F.3d at 471.

In rejecting Wilson's argument, we noted that a USSG § 2B3.1(b)(4)(B) enhancement is proper "if the act of physical restraint 'adds to the basic crime.'" *Wilson*, 198 F.3d at 472 (quoting *United States v. Mikalajunas*, 936 F.2d 153, 156 (4th Cir. 1989)). After discussing our decisions in both *Stokley* and *Mikalajunas*, we concluded that the woman in the second carjacking was physically restrained such that the application of the USSG § 2B3.1(b)(4)(B) enhancement was proper, because a gun was held to the woman's head and she was briefly prevented from leaving her car until Wilson and Gilbert were able to get her money and gain control of her car. *Wilson*, 198 F.3d at 472. In reaching this conclusion, we noted that physical restraint neither is an element of carjacking, nor specifically incorporated into the base offense level for the Robbery Guideline. *Id.* Finally, in *dicta*, we noted that the woman in the first carjacking was not physically restrained. *Id.*

Turning to Dimache's case, its outcome is controlled by *Wilson*. In *Wilson*, the USSG § 2B3.1(b)(4)(B) enhancement was upheld because Wilson and Gilbert pointed a gun at the victim's head and prevented her from leaving her car until she turned over both her money and her car. *Wilson*, 198 F.3d at 472. In our case, the two bank tellers ordered to the floor at gunpoint were prevented from both leaving the bank and thwarting the bank robbery (for example, by tripping the bank's alarm). There is no meaningful way to distinguish the case currently before the court and our decision in *Wilson*.

Dimache seeks to get around *Wilson* in two ways. First, he asks us to reconsider *Wilson*, positing that the decisions of *Parker*, *Drew*, and *Anglin* are better reasoned, because those decisions limit the USSG § 2B3.1(b)(4)(B) enhancement to conduct nearly identical to the examples listed in the definition of "[p]hysically restrained," *see* USSG § 1B1.1, comment. (n.1(K)) (defining "[p]hysically restrained" as "the

forcible restraint of the victim such as by being tied, bound, or locked up"). He also asks us to adopt the *Parker*, *Drew*, and *Anglin* line of authority because it is supported by the Supreme Court's decision in *Begay v. United States*, 553 U.S. 137 (2008). In *Begay*, the Court held that the listed examples in the Armed Career Criminal Act's definition of "violent felony" (defined as a crime that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another") illustrate the types of crimes that fall within the scope of the residual clause ("otherwise involves conduct that presents a serious potential risk of physical injury to another"). *Id.* at 142. In so holding, the Court observed that driving under the influence, although a dangerous activity, was not within the scope of the definition of violent felony because it lacked the essential character of the listed examples, which the Court described as "purposeful, violent, and aggressive" conduct. *Id.* at 144-45 (citation and internal quotation marks omitted).

Courts have rejected recent attempts to use *Begay* to limit the USSG § 2B3.1(b)(4)(B) enhancement to conduct nearly identical to the examples listed in Application Note 1(K). *See, e.g.*, *Taylor*, 620 F.3d at 814-15. As the court noted in *Taylor*, a list of examples within a statutory definition "can be a clue to the statute's intended scope." *Id.* at 814. The intended scope of the USSG § 2B3.1(b)(4)(B) enhancement is to punish a defendant who deprives a person of his physical movement, which can be accomplished by means other than those listed in Application Note 1(K). *See Taylor*, 620 F.3d 814 (noting that "[h]itting a person over the head with a two-by-four will make him incapable, for a time at least, of any physical movement. But it won't create a physical barrier, as a locked door does; nothing but his being unconscious prevents him from moving"); *id.* at 815 (noting that, "[w]hether a pointed gun is used to move a person into an unlocked room and keep him there, or used to move a person from one part of the robbery scene to another, the person's freedom of movement is restrained as effectively as by shoving or drag-

ging him into a room and locking the door"). Because the intended scope of the USSG § 2B3.1(b)(4)(B) enhancement goes well beyond the examples listed in Application Note 1(K), it makes little sense to tie the enhancement to conduct nearly identical to such examples either under the authority of *Begay* or the *Parker*, *Drew*, and *Anglin* line of authority.

Second, Dimache seeks to distinguish *Wilson* on the basis that the woman in the second carjacking in *Wilson* was confined to a small area (her car), yet the two bank tellers here were confined to a large area (the bank). Although we are not convinced that the area behind the bank teller counter could be construed as large, we decline Dimache's entreaties to create a small/large distinction within USSG § 2B3.1(b)(4)(B). The size of the area is not controlling, because the applicability of the USSG § 2B3.1(b)(4)(B) enhancement turns on whether the victim's freedom of movement was restrained, regardless of the size of the area. *See Taylor*, 620 F.3d at 814 (noting that the deprivation of freedom of movement "can be accomplished by means other than creating a physical barrier to movement"). Perhaps more importantly, a small/large distinction within USSG § 2B3.1(b)(4)(B) would yield an unworkable standard.

### III

For the reasons stated herein, the judgment of the district court is affirmed.

*AFFIRMED*