In the

# United States Court of Appeals

## For the Seventh Circuit

————————————

No. 18-3057

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

JOSHUA T. HERMAN,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 2:16-CR-00061-JTM-PRC-1 — **James T. Moody**, *Judge.*

————————————

SUBMITTED MAY 28, 2019[*] — DECIDED JULY 18, 2019

————————————

Before WOOD, *Chief Judge*, and BAUER and EASTERBROOK,
*Circuit Judges*.

---

[*] We have agreed to decide this appeal without oral argument, because the briefs and record adequately present the facts and legal arguments, and oral argument would not significantly aid the court. FED. R. APP. P. 34(a)(2)(C). Pursuant to Seventh Circuit Internal Operating Procedure 6(b), it has been assigned to the panel that resolved No. 17-1423, *United States v. Herman*, 884 F.3d 705 (7th Cir. 2018).

WOOD, *Chief Judge*. This is the second time we have been asked to review the sentence that Joshua Herman received after pleading guilty to violating 18 U.S.C. § 922(g), which prohibits felons from possessing a firearm. Herman raised two issues on his first appeal: one concerned the district court's failure to recognize that it had the discretion to require Herman's federal sentence to run concurrently with an unrelated state sentence that had yet to be imposed; and the other related to the proper interpretation of U.S.S.G. § 2B3.1(b)(4)(B), which dictates that a person's offense level for robbery must be increased by two if he "physically restrained" the victim. *United States v. Herman*, 884 F.3d 705, 706 (7th Cir. 2018). (That guideline applied because Herman possessed the firearm in connection with a robbery. See U.S.S.G. § 2K2.1(c)(1)(A).) We found it necessary to reach only the first issue, which we resolved in Herman's favor. We ended our opinion by noting that "[o]n remand, the district court should consider Herman's argument that the physical restraint enhancement does not apply to him … ." *Herman*, 884 F.3d at 708.

Before we address the district court's response on remand, it is helpful to outline the facts that gave rise to this aspect of the case. On May 4, 2016, Jacob Kirk invited Herman to Kirk's house on 178th Street in Hammond, Indiana. Kirk's mother, Samantha Daniels, also lived at the house. When Kirk and Herman arrived, they saw that Daniels had a Jimenez Arms handgun partially tucked into her purse. Somewhat reluctantly, she allowed Herman to handle the gun for a moment. At that point Herman pulled out a revolver and said "Look … stay seated. I don't want to blow you guys back, but I will if I have to." He instructed Kirk and Daniels not to move, and then turned and ran outside. Kirk and Daniels ignored Herman's order and pursued him. Herman spun around, with the

Jimenez Arms gun in one hand and the revolver in the other
and fired a shot that flew past Daniels's head. Kirk recalled
that just before Herman fired, Kirk heard him say "I told you
not to … ," and then there was a "boom."

The district court ordered briefing on the question
whether the actions of pointing and shooting the gun quali-
fied as physical restraint of the two victims, Kirk and Daniels.
It noted that there is a circuit split on this issue. After holding
a resentencing hearing, the court—relying on the information
in the initial presentence report (PSR) and addendum—con-
cluded:

> Defense counsel's objections are not well-taken, so
> they're overruled. I adopt the positions of the govern-
> ment and the probation officer as set forth in the ad-
> dendum, and I reject the position of defense counsel.

Contrary to Herman's contention on appeal, this was enough.
The court was entitled to adopt the government's version of
events, as set forth in the PSR, to explain its ruling on a dis-
puted point that had been thoroughly explored. FED R. CRIM.
P. 32(i)(3); see *United States v. Canino*, 949 F.2d 928, 951 (7th
Cir. 1991).

The court calculated Herman's guidelines range as fol-
lows: to the base offense level of 20, it added seven levels be-
cause a firearm was discharged, U.S.S.G. § 2B3.1(b)(2)(A); it
added another level because a firearm was taken, *id.*
§ 2B3.1(b)(6); it added two levels based on the finding that
Herman physically restrained the victims, *id.* § 2B3.1(b)(4)(B);
and it subtracted three levels for acceptance of responsibility,
*id.* § 3E1.1. This resulted in a final offense level of 27. Her-
man's criminal history level was V; this initially led to a

recommended guidelines range of 120 to 150 months. Because 120 months was the statutory maximum, however, the final guidelines result was not a range but a point: 120 months. See U.S.S.G. § 5G1.1(c). As it had done before, the court imposed exactly that sentence on him. Had it rejected the use of the physical-restraint enhancement, the final offense level would have been 25, and the recommended range 100 to 120 months. On appeal, Herman is asking for a remand for resentencing under the latter range.

The guideline at the center of this case is section 2B3.1, which covers the offense of Robbery. It calls for a base offense level of 20, and then addresses various specific offense characteristics that cause the level to go up. The subsection of interest to us reads as follows:

> (4) … (B) if any person was physically restrained to facilitate commission of the offense or to facilitate escape, increase by 2 levels.

The Application Notes direct us to the Commentary on section 1B1.1 for a definition of the term "physically restrained." There we find the following:

> "Physically restrained" means the forcible restraint of the victim such as by being tied, bound, or locked up.

U.S.S.G. § 1B1.1, cmt. n.1(L).

As the district court recognized, our sister circuits have split on the question whether the physical-restraint enhancement can be applied to situations in which an armed defendant simply orders his victims not to move and does not otherwise immobilize them through measures such as those outlined in the commentary to U.S.S.G. § 1B1.1. The government counts four circuits that take the position that pointing a gun

at a person and commanding her not to move is enough to constitute a "physical restraint," and four that say this is not enough. Compare *United States v. Dimache*, 665 F.3d 603, 606–07 (4th Cir. 2011) (enough); *United States v. Miera*, 539 F.3d 1232, 1234–36 (10th Cir. 2008) (enough); *United States v. Wallace*, 461 F.3d 15, 33–34 (1st Cir. 2006) (enough); and *United States v. Gonzalez*, 183 F.3d 1315, 1327 (11th Cir. 1999) (enough); with *United States v. Parker*, 241 F.3d 1114, 1118 (9th Cir. 2001) (more needed); *United States v. Drew*, 200 F.3d 871, 880 (D.C. Cir. 2000) (more needed); *United States v. Anglin*, 169 F.3d 154, 163–64 (2d Cir. 1999) (more needed); and *United States v. Hickman*, 151 F.3d 446, 461 (5th Cir. 1998) (more needed). And that list does not exhaust the possibilities.

This court has attempted in the past to adopt a middle position. The leading case is *United States v. Doubet*, 969 F.2d 341 (7th Cir. 1992), abrogated on other grounds by *United States v. Dunnigan*, 507 U.S. 87 (1993). As in many cases involving this enhancement, the facts involve a bank robbery. Wearing a blue ski mask and armed, the defendant, George Doubet, approached the tellers' counter and announced a hold-up. He then leapt over the counter and instructed the three tellers to move in the direction of a back room. They complied as he ushered them along. Once in the room, he directed them to go into an attached restroom and told them that he would "blow [their] … head[s] off" if they left the restroom. *Id.* at 346. They huddled there for five minutes and then risked going out. Finding that the robber was gone, they activated the alarm. *Id.* at 342.

Doubet was convicted of the bank robbery. At sentencing, his advisory guidelines range was enhanced two levels by the physical-restraint provision, section 2B3.1(b)(4)(B). We

upheld the enhancement on appeal. One of the (nonexclusive) examples of physical restraint given in the Guidelines commentary is being "locked up." We concluded that Doubet's contention "that the victims were not physically restrained because the restroom was not locked, as in bolted shut, is an overly literal, and, we believe, overly restrictive interpretation of 'physical restraint' as that term is contemplated by the Guidelines." 969 F.2d at 346. Nonetheless, we added that simply "herding victims into a defined area" would not necessarily constitute physical restraint. *Id.* We recognized the need for a limiting principle that would avoid an interpretation under which every armed bank robbery automatically supports the physical-restraint enhancement. That "something more" in *Doubet* was the use of the weapon to force the victims into the bathroom, coupled with the statement that an accomplice was watching the door and "serv[ing] as a figurative lock and key sufficient to constitute a physical restraint." *Id.* at 347 (Although there was actually no accomplice, the victims thought there was at the time, and so we found Doubet's misrepresentation to be immaterial.)

We have been looking for something that tells us on which side of the line that divides psychological coercion from physical restraint a given case falls. In *United States v. Taylor*, 620 F.3d 812 (7th Cir. 2010), we gave a nod to the utility of the examples furnished by the definition of "physical force" in the Guidelines: "[It] is true … that a statutory list of examples of conduct that violates the statute can be a clue to the statute's intended scope; that is the core of good sense in the 'canon of construction' known as *eiusdem generis* … ." *Id.* at 814. The insight we drew from the list was that "[t]he essential character of conduct that is subject to the physical-restraint guideline … is depriving a person of his freedom of physical movement."

*Id.* There is more than one way to accomplish that type of dep-rivation: for instance, we said, knocking someone uncon-scious with a two-by-four would do the same thing. *Id.* That too is a physical act that prevents movement, for as long as the person is unconscious.

If the Guideline had been meant to apply to all restraints, it would have said so; instead, it specifies *physical* restraints. That limitation rules out psychological coercion, even though such coercion has the potential to cause someone to freeze in place. Tellingly, it did not have that effect in Herman's case—Kirk and Daniels followed him outside despite his warnings and their knowledge that he was armed with two guns. But there is a more general point here: the cases that have found physical restraint have focused on the action of the defendant, not on the reaction of the victim. If the defendant ties someone up, confines someone in a room from which there is no clear exit, renders the person immobile by knocking her out, or takes any of a thousand other physical actions against the tar-geted person that result in a physical limitation on her mobil-ity, it makes sense to speak of physical restraint. Crucially, the victim's reaction does not determine whether there is or is not physical restraint. If the defendant waves a gun around and barks out a command to stay still and the victim obeys, it makes no sense to say that the recipient of the order was *physically* restrained. Whatever restraint occurred came about from the way the victim decided to respond to the order. She might obey; she might ignore it; or she might attempt to flee. Her physical response to the defendant's attempt to coerce, however, is not something that logically belongs within the scope of the physical-restraint guideline.

Words should mean something, and in this case, the fact that the Guidelines call for physical restraint tells us that not all restraints warrant the two-level enhancement. Our review of our earlier decisions suggests that the middle position we were trying to articulate may have covered too much conduct. That is not to say, we hasten to add, that those earlier cases were necessarily wrongly decided—in *Doubet*, for instance, the enhancement would apply under the test we adopt today, not because of the gun alone, but because any victim who is herded into a separate room and told she may not come out is restrained by the four walls and whatever mechanism is used to bar the door, be it a physical lock, a body guard, or an armed robber.

As a matter of theory, our later cases state that the psychological coercion of gunpoint is not enough on its own, though some of them may have allowed the enhancement too liberally. In *Taylor,* we added in *dictum* that merely pointing a gun at someone might suffice. 620 F.3d at 814. *United States v. Carter*, 410 F.3d 942 (7th Cir. 2005), came perilously close to applying section 2B3.1(b)(4)(B) based solely on psychological coercion. In *Carter*, the defendant focused his gun on the victim and "moved her out of the bank's vault to her drawer against her will." *Id.* at 954. We found that "[t]he sustained focus of the weapon on the victim coupled with the compelled movement of the victim to another area constitutes sufficient forcible restraint to warrant the enhancement." *Id.* So far, so good, maybe. But unlike in *Doubet,* the victim in *Carter* was moved from the back vault to the teller area where she was presumably less confined. The troublesome language was this: "[a]s we held in *Doubet*, '[f]orce is not limited to physical force, but may also encompass the operation of circumstances that permit no alternative to compliance.' Here, with Carter's

gun pointed at her from only inches away, Martinez had no alternative but to comply with his instructions to move." *Id.*

The phrase "operation of circumstances that permit no alternative to compliance" could be understood to cover purely psychological coercion. We already have explained why we think that such a rule would not be true to the language of the Guidelines. A verbal order issued by a person with a threatening appearance might terrify a bank teller, or a person whose home has been invaded, or a pedestrian who is being held up at gunpoint. And that terrified person will often yield to the threats. Yet that does not make the restraint a physical one.

This does not leave the sentencing judge powerless to take into account, when crafting the sentence, conduct that appears to the judge to be the equivalent of a physical restraint. Unless a statutory maximum constrains the judge's discretion, the judge is free to consider the psychological coercion under 18 U.S.C. § 3553(a)(1), as part of "the nature and circumstances of the offense." If the use of a gun or something else to frighten or coerce a victim seems to be just as bad as a physical restraint, the prosecutor can ask for a sentence that is just as severe. That, however, is the way to account for the cases that lack a physical element—not a strained reading of the Guidelines.

We therefore align ourselves with the circuits that have found that more than pointing a gun at someone and ordering that person not to move is necessary for the application of U.S.S.G. § 2B3.1(b)(4)(B). Although ordinarily we do not use Circuit Rule 40(e) when we are simply lining up on one side of an established circuit conflict, as we are doing here, this opinion is in tension with earlier decisions from this court. To

the extent that those earlier cases allow for the application of the "physical restraint" enhancement based solely on psychological coercion—including the coercion of being held at gun point—we hereby disapprove those holdings. For that reason, we circulated this opinion to all judges in regular active service. A majority of the judges in regular active service voted not to hear the case en banc; Judges Bauer, Flaum, and Kanne voted in favor, for the reasons expressed in Judge Flaum's dissenting opinion. In light of the conflicting views on the meaning of U.S.S.G. § 2B3.1(b)(4)(B), we are ordering the Clerk of Court to send this opinion to the U.S. Sentencing Commission for its consideration.

We VACATE Herman's sentence and REMAND his case for resentencing consistent with this opinion.

BAUER, *Circuit Judge,* dissenting. I would affirm the district court for the reasons set out in Judge Flaum's dissent from the denial of hearing en banc.

FLAUM, *Circuit Judge*, with whom BAUER and KANNE, *Circuit Judges*, join, dissenting from the denial of en banc consideration. If a defendant "physically restrained" a person in order to facilitate the commission of or escape from a robbery, the Sentencing Guidelines provide that a two-level enhancement applies. U.S.S.G. § 2B3.1(b)(4)(B). In my judgment, the panel's holding that the enhancement cannot apply if it is "based solely on psychological coercion—including the coercion of being held at gun point," *ante* at 10, is problematic for three reasons: It is contrary to the Guidelines' language; it departs from over twenty-five years of this Court's precedents, *see United States v. Doubet*, 969 F.2d 341, 345–48 (7th Cir. 1992), *abrogated on other grounds by United States v. Dunnigan*, 507 U.S. 87 (1993); *United States v. Carter*, 410 F.3d 942, 954 (7th Cir. 2005); *United States v. Taylor*, 620 F.3d 812, 813–16 (7th Cir. 2010); *United States v. Black*, 636 F.3d 893, 899–900 (7th Cir. 2011); and it is in direct conflict with four other circuits, *see United States v. Wallace*, 461 F.3d 15, 33–35 (1st Cir. 2006); *United States v. Miera*, 539 F.3d 1232, 1234–36 (10th Cir. 2008); *United States v. Dimache*, 665 F.3d 603, 606–09 (4th Cir. 2011); *United States v. Chandler*, 699 F. App'x 863, 865–66 (11th Cir. 2017) (citing *United States v. Victor*, 719 F.3d 1288, 1290 (11th Cir. 2013)).

Starting with the language of the Guidelines, the panel's argument is as follows: "If [§ 2B3.1(b)(4)(B)] had been meant to apply to all restraints, it would have said so," but because it "specifies *physical* restraints," the intention must have been to limit any restraint that is not physical. *Ante* at 7. Therefore, the argument continues, "[t]hat limitation rules out psychological coercion, even though such coercion has the potential to cause someone to freeze in place." *Id.* However, § 2B3.1(b)(4)(B) does not speak of "physical restraints," only

the existence of a person who has been "physically re-strained." More to the point, I believe the panel's reasoning overemphasizes the importance of the word "physical" to the exclusion of the other words in the Guidelines' definition of "physically restrained."

The Guidelines use "physically restrained" as a term of art in many sections, not just in § 2B3.1(b)(4)(B). And the Guidelines define that term of art in the application notes: "'Physically restrained' means the forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1 cmt. n.1(L). I fully agree with the panel that "[w]ords should mean something," *ante* at 8, and I find the following dictionary definitions helpful in analyzing the plain meaning of the relevant words in § 2B3.1(b)(4)(B):

- Physically is an adverb that means "[w]ith regard to the body; in bodily terms or by bodily means."[1]

- Restrained is the past tense of the transitive verb "restrain," which means "[t]o restrict, limit, confine."[2]

As a combined phrase, then, "physically restrained" describes a state of being where an individual's control over his body or bodily means has been limited, restricted, or confined by

---

[1]    *Physically*,    Oxford    English    Dictionary    Online, https://www.oed.com/view/Entry/143126?redirectedFrom=physically#eid (last visited July 17, 2019).

[2]    *Restrain*,    Oxford    English    Dictionary    Online, https://www.oed.com/view/Entry/164002?rskey=qCuFpx&result=1&isAdvanced=false#eid (last visited July 17, 2019).

another. Additionally, I find these definitions of the relevant words in the application note useful:

- Forcible is an adjective that means "[d]one by force,"[3] and "by force" means "by employing violence, by violent means, also under compulsion."[4]

- Restraint is a noun that means "[t]he action or an act of restraining, checking, or stopping something."[5]

Combining "forcible" and "restraint" to make "forcible restraint" describes a violent or coercive action that has the effect of restraining or stopping an individual's ability to act.

These descriptions fit well with the Guidelines' nonexhaustive list of examples. If a person is tied, bound, or locked up, the person is "physically restrained" because he has limited control of his body. Likewise, a defendant engages in "forcible restraint" if he uses some violent or coercive action to restrict a person's ability to act or move. Both of these descriptive phrases are broad enough to encompass the conduct of a defendant who orders a person at gunpoint not to move.

Returning to the Guidelines' definition, and reading it as a whole with these plain meanings in mind, I fail to see how

---

[3] *Forcible*, Oxford English Dictionary Online, https://www.oed.com/view/Entry/72891?redirectedFrom=forcible#eid (last visited July 17, 2019).

[4] *By force*, Oxford English Dictionary Online, https://www.oed.com/view/Entry/72847?rskey=cjy2jg&result=2&isAdvanced=false#eid4006337 (last visited July 17, 2019).

[5] *Restraint*, Oxford English Dictionary Online, https://www.oed.com/view/Entry/164011?rskey=NunL40&result=1&isAdvanced=false#eid (last visited July 17, 2019).

a defendant who points a gun at a person and instructs him not to move has not "physically restrained" the person. The act of commanding someone at gunpoint not to move is certainly forcible—an act of violence or coercion—and the targeted individual is physically restrained because he does not have control over his body or bodily means.

The panel's response to this position is that any restraint that occurs when a defendant gives an order at gunpoint is caused by "the way the victim decided to respond to the order" and that the victim's "physical response to the defendant's attempt to coerce … is not something that logically belongs within the scope of the physical-restraint guideline." *Ante* at 7. The panel also says that the victim who receives an order at gunpoint "might obey; she might ignore it; or she might attempt to flee," and therefore, the defendant who made that order and pointed that gun is unlike a defendant who "ties someone up, confines someone in a room from which there is no clear exit, renders the person immobile by knocking her out, or takes any of a thousand other physical actions against the targeted person that result in a physical limitation on her mobility." *Id.* I suggest such reasoning is divorced from reality. Just as a person can flee from a pointed gun, a person can break ties or binding or escape from a locked up room. This does not mean she is not physically restrained.

Our prior cases, beginning with *Doubet*, consistently rejected such literal interpretations of the Guidelines' language. In *Doubet*, the defendant led three bank tellers into a small restroom and, as he carried a sawed-off shotgun, threatened that if they peeked outside, he would blow their heads off. 969 F.2d at 346. The defendant argued on appeal that he did not

physically restrain the tellers because he never touched or bound them, and they could have left because they were in an unlocked bathroom, near an unguarded exit. *Id.* We rejected that argument as premised on an "overly literal" and "overly restrictive" reading of "physically restrained." *Id.* Since the Guidelines include a nonexhaustive list of qualifying conditions—being tied, bound, or locked up—we reasoned it was clear that there were other actions a defendant could take to warrant the enhancement. *Id.* at 346–47. And given that the Guidelines define physically restrained as "the forcible restraint of the victim," we also observed that "force" includes "the operation of circumstances that permit no alternative to compliance" and is not limited to physical force. *Id.* at 347 (quoting The American Heritage Dictionary of the English Language at 513 (10th ed. 1981)). Ultimately, we held that the defendant's actions rose to the level of a "figurative lock and key" that constituted a physical restraint, and we affirmed the application of the enhancement. *Id.* We acknowledged there was a limit to the type of conduct that would suffice under the Guidelines—a defendant's act of restraining a person needed to add something to the offense. *Id.* at 346. For example, we doubted that the act of directing people to one part of a room and ordering them not to move would be enough. *Id.*

Next, in *Carter*, where the defendant forced a teller from the bank's vault to the teller drawer at gunpoint, we applied *Doubet* and noted that physical or forcible restraint only exists when "something more" than an order not to move occurs. 410 F.3d at 954. We held that the combination of the defendant's "sustained focus of the weapon on the victim" and the "compelled movement of the victim" was that "something more." *Id.* And because the teller had "no alternative but to

comply with [the defendant's] instructions," we concluded the enhancement applied. *Id.*

Finally, we declined to overrule *Doubet* and *Carter* in *Taylor* and *Black*, both of which arose out of a bank robbery where two defendants guarded the lobby, the third ordered a teller at gunpoint to open her money drawer, and the fourth ordered another teller at gunpoint to move to different places in the bank.[6] In both cases, we reaffirmed our broad interpretation of the enhancement. *Taylor*, 620 F.3d at 814 ("The essential character of conduct that is subject to the physical-restraint guideline … is depriving a person of his freedom of physical movement, and this can be accomplished by means other than creating a physical barrier to movement." (citations omitted)); *Black*, 636 F.3d at 900 ("[T]he fundamental characteristic of the physical restraint enhancement is to punish one for depriving a person of his freedom of physical movement, which can be accomplished by means beyond [the] statutory examples.").

I question the panel's assertion that our Court had been "looking for something that tells us on which side of the line that divides psychological coercion from physical restraint a given case falls." *Ante* at 6. Our cases have made clear that when we are deciding whether to apply the enhancement, we consider the entirety of the "physically restrained" definition. Accordingly, we have understood the Guidelines' list of examples—being tied, bound, or locked up—as instructive but

---

[6] The district court in each case based its enhancement decision on the fourth defendant's actions, which the courts deemed "relevant conduct" of all four defendants. *Taylor*, 620 F.3d at 813 (citing U.S.S.G. § 1B1.3(a)(1)(B)); *Black*, 636 F.3d at 899 n.2 (same).

not limiting, and any challenge to the application of the enhancement premised on an argument that the defendant did not touch or confine a person has failed. Though we have required "something more" than ordering a person to move from one location to another, we stated that this standard is satisfied when a defendant's conduct permits no alternative but compliance with the defendant's command, such as when the defendant issues the command while pointing a gun. I believe the panel should have applied this approach here, rather than create an unnecessary bright-line rule that is not supported by the Guidelines' definition of "physically restrained."

As noted above, the panel's decision directly conflicts with the First, Fourth, Tenth, and Eleventh Circuits, which hold that ordering a person at gunpoint not to move is enough for the enhancement to apply. Additionally, because the panel characterized as "troublesome" *Carter*'s standard that forcible restraint exists when there is no alternative but compliance, *ante* at 8, it creates tension with three other circuits that have not decided this precise issue. These circuits cite *Doubet* approvingly and read "physically restrained" broadly enough to encompass any conduct that leaves the targeted person with no alternative but compliance. *See United States v. Coleman*, 664 F.3d 1047, 1049–51 (6th Cir. 2012); *United States v. Stevens*, 580 F.3d 718, 720–21 (8th Cir. 2009); *United States v. Copenhaver*, 185 F.3d 178, 182–83 (3d Cir. 1999).

In sum, a person who encounters an armed robber is not necessarily physically restrained. Indeed, a person is not physically restrained if "an armed robber simply orders his victims not to move during an armed robbery" without actually pointing his gun at the victim, *see Carter*, 410 F.3d at 954,

nor if a robber "simply walk[s] up to the teller's station with a gun visible in his waistband and demand[s] money." *Taylor*, 620 F.3d at 815 (quoting *Miera*, 539 F.3d at 1236). However, pointing a gun at a person and demanding stillness is the figurative equivalent of tying, binding, or locking up a person. In each of these scenarios, the offender takes some action to facilitate the commission of or escape from a robbery that has the effect of forcibly restraining a person.

I respectfully dissent from the denial of en banc consideration.