F I L E D
United States Court of Appeals
Tenth Circuit

JAN 24 2002

PATRICK FISHER
Clerk

UNITED STATES COURT OF APPEALS

FOR THE TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

PERCY JAMES DAVIS, II,

Defendant - Appellant.

No. 01-6108
(D.C. No. CR-00-135-L)
(W.D. Oklahoma)

---

ORDER AND JUDGMENT *

---

Before **LUCERO** , **ANDERSON** , and **BALDOCK** , Circuit Judges.

---

Percy James Davis, II, appeals the sentence imposed by the district court following his conviction for bank robbery and using a firearm in the commission of a violent crime. He contends that merely pointing a rifle at his robbery victims to prevent them from moving is not "physical restraint" within the meaning of the sentencing guidelines and that the district court erred in applying a sentence

---

* This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The Court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

enhancement on such grounds.  We exercise jurisdiction under 28 U.S.C. § 1291 and affirm.

## I

The facts are not in dispute.  Davis and a codefendant entered a bank in Norman, Oklahoma, on the morning of August 31, 2000, wearing dark clothing and ski masks and armed with rifles.  Davis threw a trash bag at the teller and told her to fill it with money.  His codefendant ordered the employees and customers to the lobby floor at gunpoint, and dragged one female employee by the hair from her office to the lobby.  Both defendants shouted obscenities and death threats while swinging their rifles, and both pointed their weapons at the faces of the employees and customers.  Davis's codefendant pointed his rifle at the teller's head and demanded that she open the vault, but because she did not have the keys he simply took the trash bag filled with money from her.  As they were leaving, both defendants ordered the employees and customers to remain on the floor.  They were arrested after a car chase, and police found two loaded rifles, ski masks, and the stolen money in their vehicle.

Davis was indicted with his codefendant and pled guilty to one count of armed bank robbery in violation of 18 U.S.C. § 2113 (a) and (d), and one count of using and carrying a firearm during the commission of a violent felony in violation of 18 U.S.C. § 924(c)(1)(A).  The district court sentenced him to twelve

years imprisonment followed by three years of supervised release pursuant to U.S.S.G. §§ 2B3.1, 5D1.2(a)(1)–(3). In doing so, the court added two-level enhancements to his base offense level for each of the following specific offense characteristics: the property of a financial institution was stolen, a victim sustained bodily injury, and victims were physically restrained during the course of the robbery. A fourth upward adjustment of two levels was imposed for reckless endangerment during flight. In addition, the court ordered Davis to pay $1986 in restitution to the bank he robbed. Davis objected to the district court's imposition of a sentencing enhancement for the physical restraint of his victims, and the only issue he raises on appeal is whether the court properly determined that the robbery victims had been "physically restrained" within the meaning of U.S.S.G. § 2B3.1(b)(4)(B).

## II

Because the facts underlying the conviction are undisputed, we review de novo the district court's application of the sentencing guidelines. See United States v. Pappert, 112 F.3d 1073, 1078 (10th Cir. 1997).

The sentencing guidelines authorize a two-level upward adjustment from the base offense level for a robbery "if any person was physically restrained to facilitate commission of the offense or to facilitate escape." U.S.S.G. § 2B3.1(b)(4)(B). In the application notes, "physically restrained" is explained

-3-

to mean "the forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1, cmt. n.1(h). Davis suggests that the "exact parameters" of the term "physically restrained" are in the process of being mapped by the circuit courts and that we should hold that pointing a gun at a robbery victim does not fall within the ambit of this language. (Appellant's Br. at 7, 13–14.) We cannot accommodate Davis's request, however, because this Circuit has already spoken clearly on the issue.

In United States v. Fisher, we held that "[p]hysical restraint is not limited to physical touching of the victim. Rather, physical restraint occurs whenever a victim is specifically prevented at gunpoint from moving, thereby facilitating the crime." 132 F.3d 1327, 1329–30 (10th Cir. 1997) (citation omitted). Since Fisher we have on more than one occasion found that pointing a gun at a victim during a robbery may constitute physical restraint. See, e.g., United States v. Pearson, 211 F.3d 524, 525–26 (10th Cir.) (citing Fisher approvingly and noting that "we have determined an enhancement for physical restraint is applicable when the defendant uses force, including force by gun point, to impede others from interfering with commission of the offense"), cert. denied, 531 U.S. 899 (2000); United States v. Rucker, 178 F.3d 1369, 1373 (10th Cir.) (accepting the district court's finding that pointing a gun at victims and ordering them to the floor was a physical restraint), cert. denied, 528 U.S. 957 (1999). The rule in this Circuit is

thus clear.

Davis nevertheless strives to distinguish Fisher on the facts, suggesting that "the level of contact, compulsion, and direct physical contact" in that case was greater than what was deployed during the course of his robbery.[1] (Appellant's Br. at 8, 10.) We made clear in Fisher itself that such factors are not relevant to our "physical restraint" analysis:

> [I]n this case, the conduct warranting the physical restraint enhancement was actually distinct from the conduct supporting the bodily injury enhancement in that the coconspirator struck the security guard with the gun and then restrained him by holding the gun to his head for a period longer than it took to strike him.

Fisher, 132 F.3d at 1329 (emphasis added). Fisher therefore is directly on point.

Davis suggests that the Second Circuit adopted a better rule when it held that "displaying a gun and telling people to get down and not move, without more, is insufficient to trigger the 'physical restraint' enhancement" because such conduct "is materially different from the Guidelines examples, each of which involves a restraint of movement by the use of some artifact by which the victim is 'tied' or 'bound.'" United States v. Anglin, 169 F.3d 154, 164 (2d Cir. 1999). Although Davis might consider this to be a better rule, it is clearly not the law of

---

[1] In Fisher, one of the defendant's coconspirators "hit a security guard on the head with a stolen firearm and then held the gun to the guard's head as the other coconspirators jumped the teller counter" to take the money. United States v. Fisher, 132 F.3d 1327, 1328 (10th Cir. 1997).

this Circuit.

## III

Accordingly, we **AFFIRM** Davis's sentence.


ENTERED FOR THE COURT


Carlos F. Lucero
Circuit Judge