FILED
United States Court of Appeals
Tenth Circuit

October 16, 2012

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

JOHNSON JOE,

    Defendant - Appellant.

No. 11-4001
(D.C. No. 2:09-CR-00920-TS-3)

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

CYNTHIA BITSUIE JONES,

    Defendant - Appellant.

No. 11-4058
(D.C. No. 2:09-CR-00920-TS-1)

---

**APPEALS FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION**

---

Elizabeth L. Harris of Jacobs Chase, LLC, Denver, Colorado, for Appellant Joe.

Scott Keith Wilson, Assistant Federal Public Defender (Steven B. Killpack, Federal Public Defender, (Kathryn N. Nester, Federal Public Defender, on the reply brief), Bretta Pirie, Federal Public Defender's Office, with him on the brief), Salt Lake City, Utah, for Appellant Jones.

Elizabethanne C. Stevens, Assistant United States Attorney (Carlie Christensen, United States Attorney, with her on the brief), Salt Lake City, Utah, for Appellee.

Before **LUCERO**, **HOLLOWAY** and **TYMKOVICH,** Circuit Judges.[*]

**HOLLOWAY**, Circuit Judge.

These two direct criminal appeals arise from the same incident and have one sentencing issue in common. Accordingly, we address them together. The crime in which the two Defendants-Appellants participated included a brutal beating and sexual assault that came at the end of a bout of heavy drinking. Mr. Joe and Ms. Jones each eventually entered a guilty plea to a single charge of aggravated sexual abuse in violation of 18 U.S.C. § 2241(a)(1).

Because the incident occurred on the Navajo Reservation and both Defendants are enrolled members of the Navajo Nation, the district court had jurisdiction under 18 U.S.C. § 3242. We have jurisdiction on appeal under 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a)(1).

---

[*]After examining the appellate record, this three-judge panel unanimously determined that oral argument would not be of material assistance in the determination of appeal no. 11-4001, and therefore honored Defendant-Appellant Johnson Joe's request to submit the case on the briefs. *See* Fed. R. App. P. 34(a); 10th Cir. R. 34.1(G). Mr. Joe's case is therefore ordered submitted without oral argument.

-2-

## I

The victim of the attack, C.B., was looking for a job in Montezuma Creek, Utah, when she encountered Mr. Joe, whom she knew because they had worked together previously. They decided to drink together and soon met Ms. Jones, who was with her two children, 21-year-old Michael Whitehorse and his seventeen-year-old sister, A.W. The five decided to drink together and bought a total of 66 cans of beer. Using Ms. Jones's truck and the victim's car, they drove to a place a few miles from town and by midnight had drunk all the beer.

At that point, the victim walked off to urinate while all the others left in Ms. Jones's truck. However, the four returned only a few minutes later. After Ms. Jones had made some disparaging remarks to C.B., Ms. Jones and her daughter A.W. started punching the victim. They continued the attack, punching and then kicking the victim when she fell to the ground. C.B. would later be treated for 32 separate contusions, lacerations, and abrasions.

While C.B. was on the ground and helpless from the beating and kicking, A.W. held her arms while Ms. Jones removed her clothing. Jones then ordered her son, Mr. Whitehorse, to rape C.B. He was unable to do so, but did touch C.B.'s genital area. Ms. Jones mocked her son for being unable to perform and ordered Mr. Joe to rape C.B. (Briefs for both sides say that Ms. Jones "directed" or "ordered" the others to assault the victim with no further explanation of her authority.) Meanwhile, C.B. called to Mr. Joe to help her. Instead, however, Mr.

Joe laid on top of the victim and penetrated her vagina with his fingers. A.W. and Ms. Jones held C.B.'s arms down during the entire assault.

At some point, C.B. lost consciousness. She awoke naked and alone in the frigid December night. She managed to gather her clothes and start her car without the missing keys, and she then drove to a hospital.

## II

As noted, both Mr. Joe and Ms. Jones eventually entered guilty pleas to the first count of the indictment, which alleged aggravated sexual abuse.[1] Michael Whitehorse also pleaded guilty, although to a lesser charge of abusive sexual contact in violation of 18 U.S.C. § 2244(a)(1). After the guilty pleas, the district court directed the preparation of a presentence report (PSR) for each of them. In both cases, the PSR recommended that the offense level be increased by four under U.S.S.G. § 2A3.1(b)(1) because the offense involved the use of force against the victim.[2] In the case of Ms. Jones, the PSR also recommended that her

---

[1]The indictment stated two counts: Count I charged Cynthia Bitsuie [Jones], Michael Whitehorse, and Johnson Joe, enrolled members of the Navajo Nation, while within Indian Country, with using force against C.B., causing C.B. to engage in a sexual act, and aiding and abetting therein, all in violation of 18 U.S.C. § 2241(a)(1), 18 U.S.C. § 1153(a), and 18 U.S.C. § 2.

Count II charged the same three Defendants, all enrolled members of the Navajo Nation, within Indian Country, with knowing assault on C.B. causing serious bodily injury in violation of 18 U.S.C. § 113(a)(6), 18 U.S.C. § 1153(a), and 18 U.S.C. § 2.

[2]In both cases the PSR also applied a two-level enhancement under U.S.S.G. § 2A3.1(b)(1) because the victim sustained serious bodily injury. That
(continued...)

offense level be further increased by two under U.S.S.G. § 3A1.3 because the victim had been restrained during the offense. In the case of Mr. Joe, the government objected to the PSR because it did *not* include an enhancement for the restraint of the victim.

Neither Defendant contested the facts underlying these recommendations, *i.e.*, that force had been used and that the victim had been restrained. Both Defendants, however, objected to the recommendation (that of the PSR in the case of Ms. Jones and of the government in the case of Mr. Joe) to apply *both* the use-of-force and the restraint-of-the-victim enhancements. The district judge overruled these objections in both cases.

In Ms. Jones's case, the PSR found that the applicable sentencing range under the advisory Guidelines was 168 to 210 months of imprisonment. The district judge decided to vary downward from that range and sentenced her to 140 months' imprisonment. In Mr. Joe's case, the PSR found that the applicable Guidelines range was 125 to 168 months, but with the restraint-of-the-victim enhancement added by the court, the resulting advisory Guideline range was the same as for Ms. Jones – 168 to 210 months. The district judge again decided to vary downward from that range and sentenced Mr. Joe to 110 months' imprisonment. Both Defendants were also sentenced to a life term of supervised

---

[2](...continued)
enhancement has not been challenged.

release to commence upon their release from incarceration. Neither Defendant objected to this provision of extended supervised release.

**III**

On appeal, both Mr. Joe and Ms. Jones contend that the district court erred by applying both the enhancement for the use of force and the enhancement for the restraint of the victim. We apply the *de novo* standard of review because the issue is one of interpretation of the Guidelines. *See United States v. Rojas*, 531 F.3d 1203, 1207 (10th Cir. 2008).

In the appeal of Mr. Joe, the government contends that we should review this issue only for plain error because it says that the argument Mr. Joe makes on appeal was not raised in the district court. We conclude that the argument raised in the district court was substantively the same as this argument now asserted on appeal. This argument is essentially an objection to double counting, a term we spell out below. We note that in a memorandum submitted to the district court covering several issues, Mr. Joe's counsel clearly rejected the government's contention that the restraint-of-the-victim enhancement should apply in his case. In support of his opposition to the government's contention on this enhancement, Mr. Joe's attorney stated, *inter alia*:

> In any event, the Application Notes to Section 3A1.3 also state that the adjustment should not be applied "where the offense guideline specifically incorporates this factor, or where the unlawful restraint of a victim is an element of the offense itself . . . ." The unlawful

restraint is both an element of the charged offense and specifically incorporated by the offense guideline.

I Supp. Rec. at 27. Thus we are convinced that the essence of the double counting objection was asserted. Therefore, we reject the government's contention that we should review only for plain error on this issue.

We note for clarification that most cases from our court dealing with the issue of "double counting" in the context of sentencing enhancements employ an analysis different from the one we apply here. This court has often said that impermissible "double counting" occurs "when the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes." *United States v. Reyes Pena*, 216 F.3d 1204, 1209 (10th Cir. 2000). But we have also recognized that the Guidelines themselves provide an alternative principle of double counting, and our analysis here is based on that alternative principle to which we now turn.

In *United States v. Coldren*, 359 F.3d 1253, 1256 (10th Cir. 2004), we noted: "Of course, if a particular guideline specifically speaks to double counting, such an instruction would be controlling." We must determine whether such an instruction exists here and prohibits the "double counting" underlying the calculation of Defendants' offense levels. In this connection, the Guidelines instruct courts not to apply the restraint-of-the-victim enhancement "where the

offense guideline specifically incorporates this factor, or where the unlawful

restraint of a victim is an element of the offense itself (*e.g.*, this adjustment does

not apply to offenses covered by § 2A4.1 (Kidnapping, Abduction, Unlawful

Restraint))." U.S.S.G. § 3A1.3, cmt. n.2.[3]

Accordingly, we must consider whether the restraint-of-the-victim

enhancement is specifically incorporated in the use-of-force enhancement or

whether physical restraint – as our cases have construed the term – is an element

of the crime of aggravated sexual abuse, which is charged against the Defendants

here. If either situation exists, the restraint-of-the-victim enhancement should not

have been applied. U.S.S.G. § 3A1.3, cmt. n.2. This issue requires that we

carefully examine the restraint-of-the-victim enhancement.

First, however, we must consider what it means for one Guideline

enhancement to specifically incorporate another enhancement. The government

contends that we should examine only the express language of the offense

guideline. We reject the invitation to so narrowly confine our analysis of the

applicable guideline.

In *Coldren*, we undertook a different analysis. Mr. Coldren had been

convicted of being a felon in possession of a firearm. He challenged the

sentencing judge's decision to enhance his offense level both for assaulting a

---

[3]In each of these cases, the PSR used the 2009 edition of the Guidelines
Manual, and we will do so on appeal.

-8-

police officer by pointing a rifle at him during commission of the crime, and for using the weapon in connection with another felony. The *Coldren* panel noted that the Guidelines commentary directed sentencing courts not to apply the assault-of-a-police-officer enhancement of U.S.S.G. § 3A1.2 "if the offense guideline specifically incorporates this factor." 359 F.3d at 1256 (quoting U.S.S.G. § 3A1.2 cmt. n.2). Rather than proceeding next to examine the language of the offense guideline, however, *Coldren* immediately refined and restated the issue: We said that the inquiry was whether "the offense *conduct* . . . specifically addresses whether the defendant assaulted a law enforcement officer . . . ." *Id.* (emphasis added; emphasis in original removed). We proceeded to examine and discuss the scope of application of the enhancements at issue, but we did not simply examine the language of the enhancements to determine if the words of one were "specifically incorporated" in the other.

Not only is *Coldren* binding precedent on the question of how to analyze the specific incorporation issue, but the alternative approach for which the government argues is impracticable. This is because the offense guideline for the crime of conviction at issue here is (not atypically) extremely terse:

(a) Base Offense Level:

> (1) 38, if the defendant was convicted under 18 U.S.C. § 2241(c); or
>
> (2) 30, otherwise.

U.S.S.G. § 2A3.1(a). The use-of-force enhancement in U.S.S.G. § 2A3.1(b)(1) is not even apparent on the face of that subsection, which says only that the offense level is to be increased by four if "the offense involved conduct described in 18 U.S.C. § 2241(a) or (b)."[4]

Accordingly, adapting the *Coldren* approach to the instant case we must determine whether the offense *conduct* specifically addressed whether the victim was physically restrained. The offense conduct here was aggravated sexual assault, committed with the use of force. We have held that this use-of-force enhancement is

> justified by the factual finding that the perpetrator used such physical force as is sufficient to overcome, restrain or injure a person; or the use of a threat of harm sufficient to coerce or compel submission by the victim. That is, a force enhancement is appropriate when the sexual contact resulted from a restraint upon the other person that was sufficient that the other person could not escape the sexual contact.

*United States v. Reyes Pena*, 216 F.3d 1204, 1211 (10th Cir. 2000) (quotation marks and citations omitted).

The restraint-of-the-victim enhancement at issue here directs the court to increase the defendant's offense level by two if "a victim was physically restrained in the course of the offense . . . ." U.S.S.G. § 3A1.3. And to assist in

---

[4]The base offense level of 30 is mandated under U.S.S.G. § 2A3.1(1) for either "Sexual Abuse" under 18 U.S.C. § 2242 or "Aggravated Sexual Abuse" under § 2241. "The degree of force necessary to violate § 2241 warrants the four-level enhancement under § 2A3.1(b)(1)." *United States v. Chee*, 514 F.3d 1106, 1116 (10th Cir. 2008).

application of the guideline, the accompanying commentary offers (by cross-reference to another section) a definition of "physically restrained": "'Physically restrained' means the forcible restraint of the victim such as by being tied, bound, or locked up." U.S.S.G. § 1B1.1 cmt. n.1(k). Like most other courts, we have held that the examples listed in the definition are intended only as examples and not as an exhaustive list of how a victim may be physically restrained. *See United States v. Ivory*, 532 F.3d 1095, 1105 (10th Cir. 2008).

Some courts have limited their interpretation of the "physically restrained" phrase to acts that are similar to the listed examples. *See, e.g.*, *United States v. Anglin*, 169 F.3d 154, 164 (2d Cir. 1999). Our court has taken a different approach, however. In *United States v. Miera*, 539 F.3d 1232 (10th Cir. 2008), the victims of a bank robbery had been ordered to put their hands up and not move. We found that the restraint enhancement had been properly applied. In the course of our discussion, we noted that "physical restraint is not limited to physical touching of the victim." 539 F.3d at 1234 (quoting *United States v. Fisher*, 132 F.3d 1327, 1329 (10th Cir. 1997)). Our holding in *Miera* was similar to previous holdings. *See Fisher*, 132 F.3d 1327 (pointing gun at bank guard was physical restraint); *United States v. Pearson*, 211 F.3d 524, 527 (10th Cir. 2000) (same).[5]

---

[5]These cases arose under U.S.S.G. § 2B3.1(b)(4)(B), which applies to robberies. But that provision, like the one at issue here, uses the term "physically

(continued...)

Mr. Miera had argued that his case was different from previous ones in which we had upheld the restraint-of-the-victim enhancement in robbery cases. Miera argued that in those cases a gun had been pointed at a victim to achieve restraint, but in his case his accomplice had waved the gun around the room and had not pointed the gun at anyone in particular. We said that even if that were true, "such conduct would, in all likelihood, have had the effect of physically restraining everyone in his presence." 539 F.3d at 1235.

Thus, although the Guidelines provision we are examining here uses the term "physically restrained," and "physically" would seem to be a modifier of "restrained," our cases have wrenched "physically" from its original place so that it now seems to describe the conduct or the inner thoughts of the *victim*. Thus, we have said that keeping victims from "even considering an escape" is to physically restrain them. *Miera*, 539 F.3d at 1235. Indeed, it may seem as though our construction has gone so far as to render "physically" a nullity: if preventing a victim from thinking about escape, *see id.*, is to "physically restrain" that victim, then it is quite a challenge to conceive of a restraint that would not be deemed "physical" under this court's case law.

This panel is, of course, bound by the decisions of prior panels, and we must find the path laid out by our precedents. We have reviewed the decisions

[5](...continued)
restrained," and the same definition of that term applies in both the robbery and the sexual assault contexts.

because their broad construction of "physically restrained" is the very foundation of the argument that we address. Quite apart from whether our cases or cases like *Anglin* better discern the meaning of "physically restrained," we conclude that our cases have defined the term very broadly indeed.

We must next determine whether the breadth of our precedents is so great as to completely overlap the reach of the use-of-force enhancement. That is, we now reach the crucial question whether the restraint-of-the-victim enhancement – as our cases have construed it – is incorporated in the offense guideline or is an element of the offense itself. We conclude that it *is* such an element of the offense itself. Quite simply, it appears to be impossible to commit the offense of aggravated sexual abuse under § 2241(a)(1) without also applying force that, in our circuit, constitutes physical restraint of the victim.

At oral argument, counsel for the government was challenged to propose a case that would involve aggravated sexual abuse with the use of force without physical restraint of the victim. Government counsel suggested an assault by surprise might occur without the victim being restrained. But when we consider the definition of aggravated sexual abuse with the use of force, that hypothetical seems very unrealistic.

We therefore hold that the district court erred when it enhanced Defendants' offense levels for physical restraint of the victim as well as enhancing for the use of force against her. The government, which has the burden

of proof of showing harmlessness, *see United States v. Kieffer*, 681 F.3d 1143, 1169 (10th Cir. 2012), has not argued that this error was harmless. Our cases lead us to the conclusion that it was not.

If the government had argued that this error was harmless, no doubt that argument would have been centered on the fact that the district judge varied downward from the incorrectly calculated guidelines range to reach the sentence that he concluded was most appropriate in view of all of the factors listed in 18 U.S.C. § 3553(a). We have, however, emphasized the importance of the guideline range as the starting point in the process. *See, e.g., Kieffer*, 681 F.3d at 1170. We said there that "where the beginning point for a sentencing court's analysis of the § 3553(a) factors is *measurably* wrong, the ending point usually will result from an incorrect application of the Guidelines." *Id*. (emphasis in original).[6]

The government has not argued that the error is harmless, and we believe that the error is not *obviously* harmless. As explained herein, we remand for re-sentencing in both of these appeals.

**IV**

---

[6]In *Kieffer*, the sentencing judge had expressed the intention of giving a within Guidelines sentence. The government has not, however, argued in this case that the principle just quoted in the text should be limited to that context. We therefore do not decide that question, although we do note that the quoted language could certainly lend support to the proposition that the principle is not so limited.

Both Mr. Joe and Ms. Jones were sentenced to life terms of supervised release upon completion of their terms of imprisonment. Mr. Joe appeals from that decision, but Ms. Jones does not. Mr. Joe concedes that our review on this issue is only for plain error because no objection was made in the district court to this part of the sentence. In order to prevail on plain error review, a party must show there is "(1) error, (2) that is plain, (3) which affects [the party's] substantial rights, and (4) which seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Romero*, 491 F.3d 1173, 1178 (10th Cir. 2007).

Mr. Joe's argument is a procedural one. He focuses on the fact that the PSR had said and the judge apparently believed – both erroneously according to Mr. Joe – that a life term of supervised release was authorized by the Guidelines. At sentencing, the court imposed a life term without explanation . That sentence was not authorized under the Guidelines, Mr. Joe maintains, because U.S.S.G. § 5D1.2(c) authorizes a life term only for certain offenses that are not involved here.

Aggravated sexual abuse, the crime of conviction here, is a Class A felony. *See* 18 U.S.C. § 3559(a)(1). Under U.S.S.G. § 5D1.2(a)(1), the term of supervised release for a Class A felony is at least three years but not more than five years. That provision, however, is subject to one qualification: Under U.S.S.G. § 5D1.2(c), the term of supervised release "shall be not less than any

statutorily required term of supervised release." In this case, there is a statutorily required term of supervised release. The statute governing supervised release provides that the term for a violation of 18 U.S.C. § 2241 shall be "any term of years not less than 5, or life."

Mr. Joe acknowledges that these provisions interact to amend the basic provision of § 5D1.2(a)(1) – which provides for a term from three years to five years – so that his *minimum* term of supervised release is five years, not three years. But Mr. Joe argues that five years is also the *maximum* term authorized. This is certainly a plausible reading of these interacting statutory and guidelines provisions. But on plain error review, Mr. Joe cannot prevail unless his reading of these provisions is the obviously correct reading. To put it the other way round, Mr. Joe must show that it was plain error for the district court to construe the guidelines provisions as authorizing the life term of supervised release that was imposed.

The government contends that Mr. Joe's argument is foreclosed by *United States v. Poe*, 556 F.3d 1113 (10th Cir. 2009). In that case, Mr. Poe had been sentenced to a ten-year term of supervised release, which he challenged as an upward variance that the sentencing court failed to justify, arguing that the upper limit under the Guidelines was six years. The government argued that when the statutory minimum is greater than the applicable guidelines range, the guideline range is equivalent to the statutory range.

-16-

The panel in *Poe* declined to address the issue, holding that any error was not plain. The panel noted that Mr. Poe had not pointed to any Supreme Court or Tenth Circuit case addressing the issue. That fact, plus the fact that the panel concluded that the Guidelines were not "clearly and obviously" limited to Poe's interpretation, meant that there was no plain error. The government insists that this precedent should control here. We agree.

Here, as in *Poe*, the period of supervised release imposed by the sentence was the statutory maximum for the crime of conviction. Here, as in *Poe*, the maximum term under the Guidelines was less than the statutory maximum (ignoring, for the moment, the government's argument that the statutory range becomes the Guidelines range in these circumstances).[7] As in *Poe*, we cannot say that the government's reading of the Guidelines is obviously wrong. Therefore, we are constrained by *Poe* to find no plain error here in the imposition of the lifetime term of supervised release.

---

[7]In *Poe*, the statutory minimum period of supervised release was greater than the Guidelines maximum term, whereas in the instant case the statutory minimum was equal to the Guidelines maximum term. But that difference is inconsequential because the sentence challenged here was the maximum statutory sentence.

## Conclusion

We REMAND for the district court to vacate the sentences of both Mr. Joe

and Ms. Jones and to re-sentence both in accordance with our holdings herein.