FILED
United States Court of Appeals
Tenth Circuit

August 4, 2025

Christopher M. Wolpert
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

    No. 24-5068

DAKOTA WAYNE CAMPUS,

    Defendant - Appellant.

_____

**Appeal from the United States District Court
for the Northern District of Oklahoma
(D.C. No. 4:22-CR-00064-JFH-1)**
_____

Josh Lee, Assistant Federal Public Defender (Virginia L. Grady, Federal Public Defender with him on the briefs), Denver, Colorado, for Defendant-Appellant.

George Jiang, Assistant U.S. Attorney (Clinton J. Johnson, U.S. Attorney, with him on the brief), Tulsa, Oklahoma, for Plaintiff-Appellee.
_____

Before **McHUGH**, **EID**, and **FEDERICO**, Circuit Judges.
_____

**FEDERICO**, Circuit Judge.
_____

On February 4, 2022, the Tulsa Police Department responded to multiple calls from concerned neighbors about the welfare of M.D., Dakota Wayne Campus's pregnant fiancée, regarding a violent domestic dispute

occurring in M.D.'s apartment. M.D. attempted to flee and run to a neighbor's apartment for help. Campus, however, ran after M.D., pointed a firearm at her head, and physically dragged her back to her apartment. Once inside, Campus threw her to the ground and strangled her. When the police arrived, Campus fled the scene by jumping out the window of M.D.'s two-story apartment. He was apprehended seven days later.

A jury found Campus guilty of several crimes for assaulting and attempting to strangle his pregnant fiancée in Indian Country. Campus does not appeal his convictions, but he challenges the 240-month sentence he received. He argues that the district court improperly calculated the sentencing range under the United States Sentencing Guidelines (Guidelines) because § 3A1.3's adjustment for restraint of a victim should not have been applied against him because he received a different enhancement for conduct that inherently involves a degree of restraint. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I

Campus was charged by indictment with: (1) assault of an intimate/dating partner by strangling and attempting to strangle in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 113(a)(8); (2) assault with a dangerous weapon with intent to do bodily harm in Indian Country, in violation of 18 U.S.C. §§ 1151, 1152, and 113(a)(3); (3) carrying, using,

and brandishing a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c)(1)(A)(ii); and (4) possession of a firearm and ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2).

The victim, M.D., testified at trial that Campus had been physically abusive and strangled her both on February 3 and 4, 2022, because Campus believed M.D. was cheating on him, and M.D. wanted to discuss the idea of putting the baby up for adoption. M.D. testified that on February 4, Campus assaulted her and threw her mobile phone, wallet, and shoes out the window of her second-story apartment and into the snow. M.D. testified that she then ran into the hallway, went to her neighbor's door across the hall, and tried to knock for help. According to M.D., Campus pursued her with a gun, pointed it at her face, and then dragged her back into the apartment by the hood of her sweatshirt. The jury heard, inter alia, the audio recordings of 911 calls made by two concerned neighbors regarding the domestic abuse, along with the testimony of the responding officers and medical staff who treated M.D. At trial, Campus testified in his defense, maintaining his innocence.

On November 16, 2022, the jury found Campus guilty of all counts charged. Prior to sentencing, the Government filed objections to the Presentence Investigation Report (PSR). It argued that Campus's conduct warranted additional upward adjustments under the Guidelines for:

(1) obstruction of justice under § 3C1.1; (2) restraint of victim under § 3A1.3; and (3) assault of a vulnerable victim under § 3A1.1(b)(1).

As pertinent to this appeal,[1] Campus argued the application of § 3A1.3's two-level adjustment was erroneous because (1) M.D. was not subject to forcible restraint "such as by being tied, bound, or locked up" and (2) that application of the adjustment would constitute impermissible double counting because unlawful restraint of a victim is an element of Count One. R. I at 375–77. The PSR was revised on May 14, 2024, to include the § 3A1.3 two-level adjustment:

> Victim Related Adjustment: The victim was physically restrained during the course of the offense; therefore, two levels are added. USSG § 3A1.3. Specifically, the defendant held the victim at gun point and forced her back into her apartment.

R. II at 45. The relevant offense conduct in the PSR included:

> On February 4, 2022, [M.D.] attempted to speak with Campus about her pregnancy. He became angry and began yelling at her. Campus then threw her phone out the window. At that point, M.D. attempted to go to the neighbor's apartment for help. However, Campus chased her into the hallway with his gun and then dragged her back into her apartment. After closing the

---

[1] Campus does not argue on appeal that there was insufficient evidence to convict him or that the application of other sentence adjustments or enhancements was erroneous. Campus also does not contest that M.D. is a member of the Cherokee Nation or that the February 4 incident occurred in Indian Country within the Northern District of Oklahoma. *See* 18 U.S.C. § 1152; *United States v. Simpkins*, 90 F.4th 1312, 1314 (10th Cir. 2024) ("[18 U.S.C. § 1152] extends the general laws of the United States to Indian [C]ountry, yet it applies only if either the victim or the defendant—but not both—is an Indian.").

door, he threw her to the ground, broke her glasses, put the gun in her face and told her he was going to shoot her and then shoot the police. M.D. reported that while she was being strangled, she could not breathe or scream. She indicated that Campus finally let her get up, at which time she went to the bathroom. He followed her into the bathroom and kept "getting in her face" because she was crying. Campus then punched her in the left side of her face as officers started knocking. He told her to shut up and not report that he was in the apartment.

*Id.* at 43.

The § 3A1.3 adjustment increased the offense level of the applicable Guidelines by two levels, which resulted in an advisory sentencing range of 110 to 137 months for Counts One, Two, and Four (which grouped together). Without the two levels added by § 3A1.3, the advisory sentencing range for these three grouped counts would have been 92 to 115 months' imprisonment.

On May 24, 2024, the district court overruled Campus's objections to the PSR and sentenced Campus to 120 months as to each of Counts One, Two, and Four, to run concurrently, and 84 months as to Count Three, to run consecutively to the other counts. Campus timely appealed.

## II

Campus argues that the district court erred in applying the two-level adjustment under United States Sentencing Guidelines § 3A1.3 for restraint of a victim because (1) the physical restraint adjustment is categorically inapplicable where the defendant has already received an

offense-guideline enhancement (here, aggravated assault) that inherently requires restraint of a victim, and (2) the strangulation adjustment under § 2A2.2(b)(4) inherently requires restraint of a victim therefore § 3A1.3 cannot be simultaneously applied.

## A

The question before us is whether the district court applied a two-level adjustment under § 3A1.3 erroneously. The Government has satisfied its burden of "proving factors enhancing a sentence by a preponderance of the evidence." *United States v. Conley*, 131 F.3d 1387, 1389 (10th Cir. 1997). Campus challenges the application of a sentence adjustment; thus, he challenges the procedural reasonableness of the sentence. *United States v. Zamora*, 97 F.4th 1202, 1207 (10th Cir. 2024).

"When evaluating the district court's interpretation and application of the Sentencing Guidelines, we review legal questions de novo and factual findings for clear error, giving due deference to the district court's application of the guidelines to the facts." *United States v. Mollner*, 643 F.3d 713, 714 (10th Cir. 2011) (quoting *United States v. Munoz-Tello*, 531 F.3d 1174, 1181 (10th Cir. 2008)). Here, we review the interpretation of the Sentencing Guidelines de novo. *United States v. Joe*, 696 F.3d 1066, 1069 (10th Cir. 2012).

**B**

Under § 3A1.3, a two-level adjustment is permissible "[i]f a victim was physically restrained in the course of the offense." U.S. Sent'g Guidelines Manual § 3A1.3 (U.S. Sent'g Comm'n 2024). The term "physically restrained" is defined in § 1B1.1's application note as "the forcible restraint of the victim such as by being tied, bound, or locked up." *Id.* § 1B1.1, cmt. n.1(L); *see United States v. Checora*, 175 F.3d 782, 790 (10th Cir. 1999) (finding that the victim was physically restrained within the meaning of § 3A1.3 when two defendants chased and tackled the victim to prevent his escape).

The list of actions in the definition is not exhaustive, and we have held that the phrase "such as" makes it "apparent that being tied, bound, or locked up are listed by way of example rather than limitation." *United States v. Roberts*, 898 F.2d 1465, 1470 (10th Cir. 1990) (citation and internal quotation marks omitted) ("We have no difficulty in concluding that a victim who is held around the neck at knifepoint is denied freedom of movement so as to be physically restrained."). Moreover, the restraint may be brief. Indeed, we have concluded that "the Commission intended 'restraint' to mean the defendant's conduct must hold the victim back from some action, procedure, or course, prevent the victim from doing something, or otherwise keep the victim within bounds or under control." *Checora*, 175 F.3d at 791.

**1**

In challenging the application of the § 3A1.3 adjustment, Campus narrows the scope of his relevant conduct to just the strangulation of M.D. (i.e., the offense of conviction in Count One) and argues that the inclusion of any conduct beyond the strangulation would result in unlawful double counting. Conversely, the Government concedes that restraint is inherent within strangulation but argues that the adjustment under § 3A1.3 applies because Campus forced the victim back into the apartment at gunpoint (i.e., that we should examine the totality of Campus's relevant conduct beyond just the offense of conviction).

Impermissible double counting occurs when "the same conduct on the part of the defendant is used to support separate increases under separate enhancement provisions which necessarily overlap, are indistinct, and serve identical purposes." *United States v. Reyes Pena*, 216 F.3d 1204, 1209 (10th Cir. 2000) (citation and internal quotation marks omitted). The Guidelines explain that "relevant conduct" is "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant" and "that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense." U.S. Sent'g Guidelines Manual § 1B1.3(a)(1). We have recognized

8

that the definition of "relevant conduct" covers "a broad range of activities."

*United States v. Damato*, 672 F.3d 832, 840 (10th Cir. 2012).

Key to Campus's argument, the § 3A1.3 physical restraint application note instructs:

> Do not apply this adjustment where the offense guideline specifically incorporates this factor, or where the unlawful restraint of a victim is an element of the offense itself (e.g., this adjustment does not apply to offenses covered by § 2A4.1 (Kidnapping, Abduction, Unlawful Restraint)).

*Id.* § 3A1.3, cmt. n.2. However, if "the restraint was sufficiently egregious, an upward departure may be warranted." *Id.* § 3A1.3, cmt. n.3 (citing *id.* § 5K2.4).

Campus chiefly relies upon *United States v. Joe* to argue that his conviction for strangulation of M.D. precluded the two-level adjustment under § 3A1.3 because strangulation inherently involves restraint of the victim. In *Joe*, the two defendants pleaded guilty to a single charge of aggravated sexual abuse in violation of 18 U.S.C. § 2241(a)(1). 696 F.3d at 1068. We held in *Joe* that physical restraint of the victim was an element of the crime of aggravated sexual abuse; therefore, the district court erred by applying both the adjustment for physical restraint as well as the enhancement for use of force against the victim. 696 F.3d at 1072.

Nevertheless, *Joe* does not dictate the outcome here. In *Joe*, the physical restraint of the victim was an element of the charged offense, but

9

that is not why this adjustment applied in this case. Campus was charged with four counts – with Counts One, Two, and Four grouped together under the Guidelines. The relevant conduct in the PSR that triggered the two-level adjustment under § 3A1.3 was (1) holding M.D. at gunpoint and (2) forcibly dragging her back into the apartment. This conduct is separate from the strangulation charged in Count One. As such, Campus fails to convince us that *Joe* forecloses a sentencing court from considering separate yet relevant conduct (i.e., preparatory or post) other than the charged offense.

Rather, we find guidance in *United States v. Holbert*, 285 F.3d 1257 (10th Cir. 2002), which addressed the totality of the defendant's relevant conduct to determine whether an adjustment under § 3A1.3 was applicable. The defendant in *Holbert* was charged with two counts of possession of a firearm following a misdemeanor conviction for domestic violence, in violation of 18 U.S.C. § 922(g)(9). 285 F.3d at 1258. The first count related to an event in August 1999 where the defendant "entered the home of his estranged wife, locked her in a bedroom, and threatened her with a firearm." *Id*. The second count covered the possession of a firearm at the time of the defendant's arrest in September 1999. The defendant entered a plea of guilty to the second count only. We held that "for the purpose of applying § 3A1.3, the defendant must have physically restrained a victim

10

in the course of the offense, and that the course of the offense[2] includes any conduct for which the defendant is accountable under § 1B1.3 (Relevant Conduct)." *Id.* at 1262–63. In that case, the "relevant conduct" included the events in August that were charged in the first count but dismissed pursuant to a plea agreement.

*Holbert* evinces that all relevant conduct must be considered when determining whether the § 3A1.3 physical restraint adjustment applies. Unlike in *Joe*, there is relevant conduct of physical restraint by Campus that is beyond the strangulation (again, an element of the offense of conviction in *Joe*) that triggered the application of the additional two levels under § 3A1.3 of the Guidelines.[3]

---

[2] Recall that § 1B1.3 includes all acts and omissions that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.

[3] The concurrence engages in a different analysis to reach the same conclusion. However, even if the concurrence's approach is analytically sound (which we do not comment on whether it is or is not), it also engages in reasoning that was not argued or presented by the parties in this case. For example, neither party mentioned *United States v. Coldren*, 359 F.3d 1253, 1257 (10th Cir. 2004), a case the concurrence discusses in depth. Although we have discretion to affirm on any ground supported by the record, "we have been—as a matter of basic fairness—'guided' by whether the parties have 'fully briefed and argued' the alternative ground" for affirmance. *United States v. Chavez*, 976 F.3d 1178, 1203 n.17 (10th Cir. 2020) (internal citations omitted).

We also recently revisited the definition of physical restraint and determined that its meaning, under § 3A1.3, does not rely on the "magnitude and duration" of the restraint to determine if it triggers the adjustment. *United States v. Walker*, 74 F.4th 1163, 1196–97 (10th Cir. 2023), *cert. denied*, 144 S. Ct. 611 (2024), *and cert. denied sub nom. Morrison v. United States*, 144 S. Ct. 1079 (2024). "[W]e have determined a victim was physically restrained when the victim was being kept within bounds or under control." *Id.* at 1197 (citation and internal quotation marks omitted); *see also United States v. Fisher*, 132 F.3d 1327, 1329–30 (10th Cir. 1997) ("Physical restraint is not limited to physical touching of the victim."); *United States v. Miera*, 539 F.3d 1232, 1234 (10th Cir. 2008) ("Rather, physical restraint occurs whenever a victim is specifically prevented at gunpoint from moving, thereby facilitating the crime. Keeping someone from doing something is inherent within the concept of restraint." (citation omitted)).

Thus, in *Walker*, we determined that the defendants' actions of holding down and forcing a child to consume food and choke triggered the two-level adjustment under § 3A1.3. 74 F.4th at 1197; *see also United States v. Ivory*, 532 F.3d 1095, 1106–07 (10th Cir. 2008) (finding that defendant physically restrained the victim for purposes of § 3A1.3 when he drove a stolen vehicle to the victim's place of work, rammed the stolen vehicle into

12

the front of the victim's van as she was leaving work, and shot at her through her windshield as she tried to back up). Under *Holbert* and *Walker*, Campus is subject to the adjustment under § 3A1.3 because, during the offense, he pursued M.D. when she attempted to flee the apartment, pointed a firearm at her head, and then physically dragged her back into the apartment before strangling her.

Indeed, this interpretation of § 3A1.3 also comports with several cases decided in sister circuits, upholding sentencing courts that applied the two-level adjustment for the physical restraint of a victim for a defendant's actions beyond the offense of conviction but in the course of the offense. *See United States v. Old Chief*, 571 F.3d 898, 901 (9th Cir. 2009) ("Here, [the] restraint of the victim was an act that added to the basic crime. Even if a stabbing necessarily involves some minimal level of restraint[.]"); *Arcoren v. United States*, 929 F.2d 1235, 1246 (8th Cir. 1991) (affirming the adjustment under § 3A1.3 because the victim was repeatedly grabbed, pushed, and prevented from leaving the bedroom on numerous occasions); *United States v. Smith-Hodges*, 527 F. App'x 354, 356 (6th Cir. 2013) ("In both cases, the victim was forced at gunpoint to move to a different, more vulnerable position and maintain it until the defendant could complete the robbery . . . such acts taken together are sufficient to trigger the enhancement."); *but see United States v. Mikalajunas*, 936 F.2d 153, 156

13

(4th Cir. 1991) ("An upward adjustment for restraint is to be made in the context of an act *which adds to the basic crime.*" (emphasis added)).

We conclude that Campus physically restrained M.D. by dragging her back to the apartment at gunpoint and then strangling her afterward. Accordingly, the district court correctly applied the two-level adjustment under § 3A1.3 to the total offense level.

**2**

Finally, Campus makes a related argument that the district court erred in imposing an additional adjustment under § 3A1.3 because he had already received a three-level enhancement for strangulation under § 2A2.2(b)(4). Section 2A2.2(b)(4) of the Sentencing Guidelines provides that, "[i]f the offense involved strangling, suffocating, or attempting to strangle or suffocate a spouse, intimate partner, or dating partner, increase by 3 levels." U.S. Sent'g Guidelines Manual § 2A2.2(b)(4). Again, because the sentencing court may review the relevant conduct during the course of the offense, which includes any conduct for which the defendant is accountable under § 1B1.3, the district court correctly concluded that the three-level enhancement under § 2A2.2(b)(4) applied to the offense of conviction and the two-level adjustment under § 3A1.3 applied to the

restraint used by Campus during the course of conduct. *Holbert*, 285 F.3d at 1262–63.

AFFIRMED.

No. 24-5068, *United States v. Campus*
**EID**, J., concurring in the judgment only.

I agree with the majority that we should affirm the district court's decision to apply both the three-level enhancement under U.S.S.G. § 2A2.2(b)(4) and the two-level adjustment under U.S.S.G. § 3A1.3 in this case. But my analysis differs.

The issue is whether Application Note 2 to U.S.S.G. § 3A1.3 forbids applying § 3A1.3's adjustment. U.S.S.G. § 3A1.3 provides for a two-level adjustment "[i]f a victim was physically restrained in the course of the offense." But Application Note 2 caveats, in relevant part, "Do not apply this adjustment where the offense guideline specifically incorporates this factor . . . ." U.S.S.G. § 3A1.3, cmt. n.2. This provides an "alternative principle" of "double counting." *United States v. Joe*, 696 F.3d 1066, 1070 (10th Cir. 2012). Campus argues § 2A2.2(b)(4) "specifically incorporates" the physical restraint of the victim, "because § 2A2.2(b)(4) already punished him for conduct that inherently involves physical restraint." Aplt. Br. at 8–9.

As I understand it, the majority opinion holds an offense guideline provision does not "specifically incorporate" the physical restraint of the victim if, as here, there is distinct conduct that independently supports applying both that provision and § 3A1.3. *See* Maj. Op. 8–15. I am not sure that this is consistent with our precedent or Note 2's text, and therefore I would avoid resolving this case on this basis.

I would instead hold that § 2A2.2(b)(4) does not "specifically incorporate" § 3A1.3's physical-restraint-of-the-victim factor because it is possible to trigger § 2A2.2(b)(4) without physically restraining the victim.

## I.

Precedent—both ours and other circuits'—indicates that an offense guideline provision does not "specifically incorporate" the physical restraint of the victim if it is possible to trigger that offense guideline through conduct that does not necessarily entail physical restraint.

In *United States v. Joe*, we "adapt[ed] the *Coldren* approach" to govern "how to analyze the specific incorporation issue" in Application Note 2. 696 F.3d at 1071. In this context, this approach asks "whether the offense conduct specifically addressed whether the victim was physically restrained." *Id.* (emphasis deleted).[1]

The "*Coldren* approach" comes from *United States v. Coldren*, 359 F.3d 1253 (10th Cir. 2004), where we considered the same "specifically incorporates" language in Application Note 2 to U.S.S.G. § 3A1.2's official-victim adjustment. The district court applied both a four-level enhancement under then-U.S.S.G. § 2K2.1(b)(5) for using a rifle in connection with another felony and the three-level adjustment under § 3A1.2 for assaulting a police officer. Both increases were based on the fact that the defendant pointed a rifle at a police officer. The defendant argued the district court was wrong to apply both increases.

We held "§ 2K2.1(b)(5) does not 'specifically incorporate' the fact that the defendant assaulted a police officer." *Id.* at 1257. We based that conclusion on how

---

[1] *Joe* extensively discussed the "specific incorporation" issue, but it ultimately held that Application Note 2 blocked § 3A1.3's application because physical restraint was "an element of the offense" charged. *Id.* at 1072. That is a separate and distinct way for Note 2 to negate § 3A1.3's application, *see id.* at 1070, not at issue here.

§ 2K2.1(b)(5) applied in the abstract. We noted, § 2K2.1(b)(5) "does not specifically refer to either the commission of an assault or an official victim." *Id.* And, as such, § 2K2.1(b)(5) could apply, and "the fact that the person [a defendant] assaulted was a police officer . . . would not have been factored into [the] sentence at all." *Id.*

Like *Coldren* suggests, other circuits have held that an offense guideline provision does not activate § 3A1.3's Application Note 2 when that provision, in the abstract, does not necessitate a finding of "physical restraint" within the meaning of § 3A1.3. *See, e.g.*, *Arcoren v. United States*, 929 F.2d 1235, 1248 (8th Cir. 1991) (holding application of U.S.S.G. § 2A3.1(b) did not preclude application of § 3A1.3 because § 2A3.1(b) "does not necessarily include the physical restraint that [§] 3A1.3 covers"); *United States v. Tholl*, 895 F.2d 1178, 1185 (7th Cir. 1990) (holding application of U.S.S.G. § 2J1.4(b)(1) did not preclude application of § 3A1.3 because "an arrest, as that term is used in [§] 2J1.4(b)(1), does not necessarily entail the sort of forcible physical restraint contemplated by" § 3A1.3); *United States v. Stokley*, 881 F.2d 114, 116 (4th Cir. 1989) (holding application of U.S.S.G. § 2K1.4(b) "did not foreclose consideration of [§ 3A1.3's] adjustment since [ ] § 2K1.4(b) does not require a finding of physical restraint");[2] *United States v. McCoy*, 480 F. App'x 366, 373 (6th Cir. 2012) (holding application of U.S.S.G. § 2H1.1(b)(1)(B)'s "under color

---

[2] Before November 1991, Application Note 2 provided, in relevant part, that § 3A1.3 does not apply if physical restraint is "specifically incorporated into the base offense level, or listed as a specific offense characteristic." U.S.S.G. App. C, at amend. 413. The 1991 amendment was not a substantive edit; it merely "clarifie[d] the application of this guideline." *Id.*

of law" enhancement did not preclude application of § 3A1.3 because "[a]n offense committed under color of law does not necessarily include physical restraint").

## II.

It is possible to trigger U.S.S.G. § 2A2.2(b)(4) without physically restraining the victim.  U.S.S.G. § 2A2.2(b)(4) applies where an assault "involved strangling, suffocating, or attempting to strangle or suffocate a spouse, intimate partner, or dating partner."  *See also* U.S.S.G. § 2A2.2, cmt. n.1.  This does not invariably require a finding of physical restraint.

For example, one can commit an assault involving "attempting to strangle" an intimate partner without physically restraining his partner.[3]  An assault through an attempt to strangle "may be completed without a battery," that is, without a person ever "mak[ing] contact with the victim's throat or neck."  *United States v. Stricker*, 4 F.4th 624, 628 (8th Cir. 2021).  Indeed, an assault via an attempt to strangle—as is the case with all "assault[s] of the attempted-battery sort"—may be completed even

---

[3] Section 2A2.2(b)(4) applied here because Campus *actually* strangled M.D. Campus focuses only on *completed* strangulations, arguing "assault by strangulation necessarily involves physical restraint."  Aplt. Br. at 9–10.  I do not see why Note 2 would require a focus only on the type of conduct that triggered the offense guideline provision, or (as such a reading would manifest here) on just one-third of the offense guideline provision.  Note 2 speaks just of "the offense guideline," generally.  And, if Campus were correct, § 3A1.3's adjustment would not apply if a defendant *actually* strangled his partner, but it *would* if a defendant only *attempted* to strangle his partner.  Yet, the Guidelines treat completed and attempted strangulations as equally reprehensible.  Reading Note 2 to bar consideration of parts of § 2A2.2(b)(4) would thus "contravene a fundamental principle of the Guidelines"—"proportionality in sentencing."  *See United States v. Wilson*, 17 F.4th 994, 1003 (10th Cir. 2021) (cleaned up).

4

"though the victim is unaware of his danger."  2 Wayne R. LaFave, *Substantive Criminal Law* § 16.3(a) (3d ed. 2024).  An assault by attempt to strangle thus can be completed where a person comes close to strangling his partner "who is asleep," or who "is facing north" as the person approaches "from the south."  *See id.*  These hypotheticals[4] do not necessarily involve "keep[ing] the victim within bounds or under control" through "physical force or another form of compulsion."  *United States v. Checora*, 175 F.3d 782, 790–91 (10th Cir. 1999).

## III.

For these reasons, I respectfully concur only in the judgment.

---

[4] *Joe* rejected some hypotheticals as "very unrealistic."  696 F.3d at 1072.  But again, *Joe* was an "is an element" holding.  *Id.*  And, in any event, that these sort of hypotheticals were worthy of space in a leading treatise's discussion of assault shows that they are not prohibitively unrealistic.