In the

# United States Court of Appeals

## for the Seventh Circuit

No. 21-2296

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

TYREE J. WHITE,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:17CR00182-001 — **Jane Magnus-Stinson**, *Judge.*

ARGUED OCTOBER 25, 2022 — DECIDED SEPTEMBER 6, 2023

Before SYKES, *Chief Judge*, and FLAUM and LEE, *Circuit Judges*.

SYKES, *Chief Judge*. Tyree White and several accomplices committed a string of armed robberies in Indianapolis in the late spring of 2017. White participated as an organizer and lookout, while his accomplices carried out the holdups. After successfully robbing a bank and two cellphone stores, the coconspirators were finally stopped when undercover detectives spotted them attempting to rob a Verizon store.

White was charged with three counts of conspiracy to commit robbery and one count of conspiracy to commit armed bank robbery. He pleaded guilty to all four charges. The district court accepted the Sentencing Guidelines calculations in the presentence report, which produced an advisory sentencing range of 97 to 121 months. The judge determined that a sentence in the middle of that range was appropriate and imposed four concurrent 108-month terms of imprisonment.

White challenges the sentence on two grounds. First, he contends that the 108-month prison term for the bank-robbery conspiracy exceeds the applicable statutory maximum. Second, he disputes two applications of the Guidelines enhancement for physically restraining a victim "to facilitate commission" of a robbery. *See* U.S.S.G. § 2B3.1(b)(4)(B). White concedes that all parties, including his own lawyer, overlooked both issues at sentencing. In other words, he acknowledges that he forfeited these challenges, so resentencing is warranted only if we find plain error.

We vacate White's sentence and remand for resentencing. The general federal conspiracy statute, 18 U.S.C. § 371, supplies the operative sentencing framework for the bank-robbery conspiracy charge, capping any term of imprisonment at 60 months. Needless to say, White's 108-month sentence on this count far exceeds the applicable statutory maximum. While the government concedes this point, it nonetheless argues that the error is harmless. This argument rests on *United States v. Gray*, 332 F.3d 491 (7th Cir. 2003), a pre-*Booker* case that is out of sync with the advisory Guidelines regime. *See United States v. Booker*, 543 U.S. 220 (2005).

Because White's 108-month sentence on the bank-robbery conspiracy conviction clearly exceeds the applicable statutory maximum, it is unlawful. The judge must impose a new sentence on that count. Though she has the discretion to restructure the entire sentence, she is not required to do so.

The physical-restraint enhancement was properly applied to one of the robbery-conspiracy counts. During the bank robbery, one of White's accomplices wielded a handgun, grabbed a bank manager by his shirt, and led him to the lobby at gunpoint. This conduct counts as physical restraint within the meaning of § 2B3.1(b)(4)(B). But the government admits that the conduct underlying the second application of the enhancement—during the robbery of one of the cellphone stores, an accomplice wielded a gun and ordered an employee to move to another area of the store—is not a form of physical restraint under our caselaw. *See United States v. Herman*, 930 F.3d 872, 875 (7th Cir. 2019) (ruling out the enhancement in the absence of physical contact or confinement). This error alone was harmless, however; it did not alter the applicable Guidelines range. So while the judge *may* revisit and restructure the entirety of White's sentence on remand, she *must* impose a new sentence only on the bank-robbery conspiracy count.

## I. Background

Over the course of several weeks in May and June 2017, Tyree White participated in several commercial armed robberies in Indianapolis. His primary role was that of a lookout, but he also assisted with his coconspirators' preparations by selecting and staking out the targeted premises and providing supplies, including (for at least one robbery) the gun. His stint as a serial robbery conspirator came to an

end in mid-June when undercover officers observed White's accomplices enter and suddenly flee a Verizon store. A chase ensued but the culprits escaped, tossing a gun from the getaway car as they fled. After three months of investigation, White was arrested. A grand jury issued a superseding indictment charging him with three counts of conspiracy to commit robbery, 18 U.S.C. § 1951(a), and one count of conspiracy to commit armed bank robbery, *id.* §§ 2113(a), (d), and 371.

The specifics of two of these robberies are important to this appeal, so we describe them in some detail. White's preparations for the first robbery began on May 8, 2017, when he entered a Fifth Third Bank in Indianapolis to inquire about opening an account, a front for his surveillance of the bank. Two days later accomplices Charles Robinson and M.W., a juvenile, entered the bank while White was stationed outside in a vehicle as the lookout. M.W. was armed with a handgun that White had provided. After locating the bank manager in his office, M.W. brandished the firearm, ordered the manager to keep quiet, and pulled him by his shirt into the lobby—all while pointing the gun at him. At the same time, Robinson grabbed cash from the teller drawers and stuffed it into a bag. The robbers then escaped.

White acted as the lookout in a second Indianapolis robbery on May 26 (about two weeks later). This time the target was a T-Mobile store. Again, White stayed in his car and watched for signs of trouble while Robinson, Johnathan Washington, and Davon Herron entered the store. Herron wielded a handgun and demanded that an employee lead the three robbers to the back room where the cellphone

inventory was kept. One or more T-Mobile employees remained in the back room as White's accomplices stole cash from a safe and several cellphones. The robbers then fled the scene, escaping in White's car and a second vehicle.

The details of the remaining robbery and attempted robbery are mostly irrelevant for our purposes. Here are the basics: About two weeks after the T-Mobile robbery, White helped plan an armed robbery of an AT&T store in Indianapolis; he then acted as the lookout as his coconspirators entered the store on June 9 and escaped with 26 stolen cellphones. The following week White teamed up with an entirely new group of accomplices because the AT&T robbers had been arrested. This new group of coconspirators attempted to rob a Verizon store on June 16. White helped gather the tools—gloves, trash bags, and zip ties—and staked out the store. But the plan faltered in the middle of the robbery when the Verizon employees ran out the back of the store. The robbers abandoned the effort and left the store empty-handed, jumping into a waiting getaway car. Because of the recent robberies of local cellphone retailers, undercover officers were watching the Verizon store; they chased the robbers but did not catch them. They did, however, see them toss a gun from the car during the pursuit.

The police continued to investigate over the summer and eventually arrested White in September. In November 2017 a grand jury returned a superseding indictment charging him with four crimes: three counts of conspiracy to commit robbery in violation of § 1951(a) and one count of conspiracy to commit armed bank robbery in violation of §§ 2113(a), (d), and 371. Two aspects of the statutory scheme underlying the bank-robbery conspiracy charge are important. First, the

Federal Bank Robbery Act, § 2113, does not provide for a conspiracy theory of liability; a defendant violates the Act only if he "takes[] or attempts to take" the property of another. Proceeding on a conspiracy theory therefore requires charging a violation of § 371, the general federal conspiracy statute. Second, while a violation of the armed-robbery provision of the Bank Robbery Act, § 2113(d), carries a possible sentence of 300 months, the general federal conspiracy statute, § 371, has a 60-month maximum.

White soon filed a petition to enter guilty pleas on all four counts. But his plea petition listed 300 months in prison as the maximum sentence for the bank-robbery conspiracy count. In other words, White's petition apparently—and erroneously—treated that count as a substantive armed-robbery offense under § 2113(d) rather than as a conspiracy offense under § 371. From that point on, all parties seemingly proceeded on a shared misunderstanding that the Bank Robbery Act (§ 2113(d)), not the general conspiracy statute (§ 371), supplied the statutory maximum sentence for the bank-robbery charge. For example, at White's change-of-plea hearing, the prosecutor stated that the maximum punishment "would be 25 years [of] incarceration." And White agreed later in the hearing that the applicable imprisonment range was 0 to 25 years. The probation office also assumed that § 2113(d) furnished the relevant statutory penalties: on the first page of the presentence report, and again later in the report, it described the bank-robbery conspiracy count as subject to "[n]ot more than 25 years [of] imprisonment."

The Guidelines calculations in the presentence report included two sentencing enhancements under § 2B3.1(b)(4)(B) for physically restraining a victim. The physical-restraint

enhancements, which reflected the conduct of White's coconspirators during the Fifth Third Bank and T-Mobile robberies, added two levels to the base offense level for each of those counts. These enhancements (and others not at issue here) resulted in adjusted offense levels of 29 for the bank robbery and 27 for the T-Mobile robbery. Taking the higher level—as the Guidelines instruct—and adjusting for multiple counts yielded a single combined offense level of 31. After subtracting three levels for acceptance of responsibility, White's final adjusted offense level was 28. Combining this level with his criminal history category of III, the probation office calculated an advisory Guidelines range of 97 to 121 months in prison.

At sentencing the judge adopted without objection the Guidelines calculations in the presentence report. After evaluating the gravity of White's offenses and his troubled upbringing, she determined that a sentence in the middle of the advisory range was appropriate. She rejected the defense argument for a sentence at the low end of the range "because of the number of crimes and the use of the weapon[s] by [White's] co-conspirators." But she also determined that a sentence at the high end was unwarranted based on White's background. In the end she imposed concurrent 108-month sentences on each of the four counts.

## II. Discussion

White raises two claims of error, both relating to his sentence. He challenges his 108-month sentence on the bank-robbery conspiracy count, pointing out—for the first time on appeal—that the superseding indictment necessarily charged him with violating § 371, not § 2113(d), and the statutory maximum sentence for that crime is 60 months. He

also challenges the two physical-restraint enhancements, arguing that in neither the Fifth Third Bank robbery nor the T-Mobile robbery did his coconspirators' conduct amount to physical restraint under § 2B3.1(b)(4)(B).

These arguments are new. As we've noted, White did not object to the presentence report, and everyone assumed throughout the proceedings below that the bank-robbery conspiracy carried a 300-month maximum. So our review is limited to correcting plain error, which requires White to show that

> (1) there is an error that has not been intentionally relinquished or abandoned; (2) the error is clear or obvious; (3) the error affected [his] substantial rights, i.e., it affected the outcome of the [sentencing] proceedings … ; and (4) the error seriously affects the fairness, integrity or public reputation of [the] judicial proceedings.

*United States v. Galvan*, 44 F.4th 1008, 1011 (7th Cir. 2022) (cleaned up).

## A. Statutory Maximum

We first address White's 108-month sentence for the conspiracy to rob the Fifth Third Bank. We need not dwell on the first three elements of plain-error review. The government agrees that the superseding indictment charged White under the general federal conspiracy statute, which carries a maximum sentence of 60 months in prison. White's 108-month term obviously exceeds that statutory maximum, so an error occurred. The record also suggests—and the government does not dispute—that this error was simply overlooked by all parties, not intentionally relinquished or

abandoned. "And because this error is apparent from the language of 18 U.S.C. § 371," it is both clear and obvious. *United States v. Gibson*, 356 F.3d 761, 766 (7th Cir. 2004). The error also affected White's substantial rights; it increased his sentence for the bank-robbery conspiracy by at least 48 months. *See United States v. Dooley*, 688 F.3d 318, 321 (7th Cir. 2012) ("[A]n extra 48 months in prison is 'substantial' by any measure.").

Indeed, the government admits that the statutory sentencing error is "plain enough." Yet it contends that we need not correct the error because it did not "seriously affect[] the fairness, integrity or public reputation of [the] judicial proceedings." *Galvan*, 44 F.4th at 1011. The government's argument rests on our reasoning in *Gray*, which became obsolete after the Supreme Court's decision in *Booker* made the Guidelines advisory. *Gray* involved a defendant who pleaded guilty to three crimes, each stemming from a drug deal that culminated in a high-speed chase. 332 F.3d at 491–92. At sentencing neither party "mentioned the relevant statutory maximums," and like in this case, the judge selected a sentence in the middle of the applicable Guidelines range, imposing three concurrent 87-month prison terms. *Id.* at 492. But the 87-month sentences exceeded the statutory maximum sentence for all three crimes. *Id.* at 493.

The defendant did not object in the district court, so our review in *Gray* was limited to correcting plain error. Though we acknowledged the obvious error, we agreed with the government that a remand for resentencing was unnecessary because the sentences "d[id] not exceed the combined statutory maximum achievable by running the sentences consecutively." *Id.* For the defendant's three crimes, that

consecutive statutory maximum was 156 months. *Id.*[1] Because he had been sentenced to 87-month terms, "well below the total, consecutive maximum," *id.*, we declined to remand for resentencing. The errors "did not affect the fairness, integrity, or public reputation of the proceedings." *Id.*

Crucially, our reasoning in *Gray* was keyed to § 5G1.2(d) of the Guidelines, which states in part: "If the sentence imposed on the count carrying the highest statutory maximum is less than the total punishment, then the sentence imposed on one or more of the other counts *shall run consecutively*, but only to the extent necessary to produce a combined sentence equal to the total punishment." (Emphasis added.) Simplified, § 5G1.2(d) instructed judges to impose consecutive sentences in the circumstances presented in *Gray*, and because *Gray* predated *Booker*, 543 U.S. 220, the Guidelines were mandatory. The fact that § 5G1.2(d) would *require* the same outcome on remand was central to our decision: "[E]ven if we were to remand for resentencing, § 5G1.2(d) would instruct the district court to impose the sentences consecutively to the extent necessary to achieve the total punishment; thus, Gray would receive the same sentence as before." *Gray*, 332 F.3d at 493.

The government treats *Gray* as dispositive here. Not so. Our decision in *Gray* necessarily rested on the Guidelines' then-mandatory effect. After *Booker*, the Guidelines are no longer mandatory, and the premise of *Gray* is fundamentally at odds with the modern advisory Guidelines regime. Today

---

[1] Gray was convicted of two drug crimes, each carrying a 60-month maximum, and assault of an officer, which was subject to a 36-month maximum.

when we remand for correction of an unlawful sentence in a multicount case, the judge may—but certainly is not required to—restructure the overall sentencing package to achieve the same total prison term. *Gray*'s holding on this point is no longer relevant to the kind of sentencing error presented here—that is, when one of several concurrent prison terms exceeds the applicable statutory maximum. Because its reasoning is outdated, *Gray* should no longer be cited for this point.[2]

With *Gray* out of the picture, we see no reason to depart from an otherwise obvious rule that flows directly from the Constitution's separation of powers: A term of imprisonment "must comply with the maximum (and minimum, if there is one) provided by the statute of conviction." *United States v. Cieslowski*, 410 F.3d 353, 363 (7th Cir. 2005). Put differently, when a sentence exceeds a congressionally mandated limit, it is unlawful, and we "cannot give [it] effect." *Gibson*, 356 F.3d at 766 (quotation marks omitted). Contrary to the government's contention, we cannot leave the error uncorrected simply because the judge has also ordered White to serve concurrent, within-range sentences that equal or exceed the unlawful sentence. Doing so "would impugn the fairness, integrity, and public reputation of the judicial proceedings that have taken place in th[e] case" and

---

[2] We acknowledge that even post-*Booker* we have sporadically cited *Gray* with approval. *See, e.g.*, *United States v. Radick*, 261 F. App'x 891, 897 (7th Cir. 2008); *United States v. Ross*, 510 F.3d 702, 713 n.3 (7th Cir. 2007); *United States v. Shurn*, 163 F. App'x 409, 412 (7th Cir. 2006); *United States v. Angulo-Hernandez*, 175 F. App'x 79, 82–83 (7th Cir. 2006); *United States v. West*, 207 F. App'x 719, 722–23 (7th Cir. 2006); *cf. United States v. Ghuman*, 966 F.3d 567, 578 (7th Cir. 2020).

would threaten respect for the judicial system as a whole. *Id.* at 767.

We are particularly inclined to vacate White's sentence because, as we've explained, the judge made her sentencing decision based in part on the mistaken assumption that the bank-robbery conspiracy count was subject to a statutory maximum of 25 years, while the other three counts were subject to a 20-year maximum. It's possible—though the record is silent on the matter—that this assumption had an "anchoring effect on [her] determination of a reasonable sentence" on all four counts of conviction. *United States v. Currie*, 739 F.3d 960, 966 (7th Cir. 2014). Had she known that the maximum sentence for the bank-robbery conspiracy count was in fact only five years, she might have chosen a lesser sentence overall.

## B. Physical-Restraint Enhancements

We turn next to the physical-restraint enhancements that were applied to White's convictions for the Fifth Third Bank and T-Mobile robberies. Removing both enhancements would drop the advisory Guidelines range from 97 to 121 months to 87 to 108 months, so White argues that he is entitled to a new sentence on all four counts of conviction, not just the bank-robbery conspiracy count.

Section 2B3.1(b)(4)(B) of the Sentencing Guidelines provides for a two-level increase to the base offense level "if any person was physically restrained to facilitate commission of the offense or to facilitate escape." For a definition of "physically restrained," the Application Notes direct us to the Commentary for § 1B1.1, which defines "physically restrained" as "the forcible restraint of the victim such as by

being tied, bound, or locked up." U.S.S.G. § 1B1.1 cmt. n.1(L). Although White himself did not physically restrain anyone, the Guidelines hold him accountable for the foreseeable conduct of his coconspirators. *Id.* § 1B1.3(a)(1)(B). White does not raise a challenge sounding in foreseeability, so our focus here is on the meaning of "physically restrained" within the context of § 2B3.1(b)(4)(B).

We recently reconsidered the meaning of that phrase in *United States v. Herman*, 930 F.3d 872 (7th Cir. 2019). Focusing on the guideline's use of the word "physical," we drew a line between true "physical restraint" and mere "psychological coercion." *Id.* at 875. That is, the guideline "specifies *physical* restraints," and "[t]hat limitation rules out psychological coercion, even though such coercion has the potential to cause someone to freeze in place." *Id.* at 875–76. Extending our previous discussion in *United States v. Taylor*, 620 F.3d 812 (7th Cir. 2010), we held that the conduct underlying the enhancement must "depriv[e] a person of his freedom of physical movement." *Herman*, 930 F.3d at 875 (quoting *Taylor*, 620 F.3d at 814). This conduct often will be a "physical act that prevents movement." *Id.* But at the very least, the victim must *actually* be restrained by something—even if only the four walls of a room and some sort of mechanism "used to bar the door." *Id.* at 876.

Applying *Herman*'s reasoning to the conduct of White's coconspirators, we conclude that the judge correctly applied one physical-restraint enhancement. During the commission of the Fifth Third Bank robbery, M.W. physically restrained the bank manager. But no such physical restraint occurred during the T-Mobile robbery; in fact, the government concedes as much.

Starting with the application of the physical-restraint enhancement to the bank robbery, White does not dispute that M.W. grabbed the manager of the Fifth Third Bank by his shirt and led him into the lobby while pointing a gun at him. But he argues that M.W.'s conduct did not constitute physical restraint because the manager was still able to move to a different location within the bank. He also emphasizes that the physical contact was neither lengthy nor confining, relying on factors cited by the Third Circuit in *United States v. Bell*, 947 F.3d 49, 59–60 (3d Cir. 2020).

Of course, the law of the Third Circuit is not binding on us. And White advances no reason why we should abandon our recent analysis in *Herman* in favor of the Third Circuit's multi-factor approach. Under *Herman* there was no error—and certainly no plain error—in the judge's application of the physical-restraint enhancement to White's conviction for the Fifth Third Bank robbery. By pulling the bank manager by his shirt into the lobby at gunpoint, M.W. engaged in a physical act that "depriv[ed the manager] of his freedom of physical movement." *Herman*, 930 F.3d at 875. That's enough to justify application of the physical-restraint enhancement.

We turn then to the T-Mobile robbery, during which Herron flashed a handgun and ordered a T-Mobile employee to lead the way to a back inventory room. The employee did so, and then stayed with the robbers while they stole cellphones and cash. Nothing in the record, however, suggests that the robbers made physical contact with this (or any other) employee, nor did they confine anyone in the back room. At most, an uncertain number of employees remained in the back room while the ransacking occurred. But the physical-restraint enhancement is not so capacious

as to cover any instance where a bystander stands in the vicinity of an offense. Even if those employees felt too frightened to leave (and we don't doubt that they did), under *Herman* this is the sort of purely psychological coercion that the text of § 2B3.1(b)(4)(B) rules out. We therefore conclude that the physical-restraint enhancement was improperly applied to the T-Mobile robbery count.

Indeed, the government concedes this point, acknowledging that Herron's conduct "consisted of … psychological coercion." Yet it argues that because the erroneous application of § 2B3.1(b)(4)(B) to the T-Mobile count did not ultimately influence the advisory Guidelines range, the error had no effect on White's substantial rights and does not warrant correction on plain-error review.

We agree. Even if we remove the physical-restraint enhancement from the T-Mobile count, the resulting Sentencing Guidelines range would not change. True, the adjusted offense level for that count would be 25 instead of 27. But the Guidelines multiple-count adjustment calculation operates on the count with the highest adjusted offense level. *See* U.S.S.G. § 3D1.4. In this case that's the bank-robbery conspiracy count with an adjusted offense level of 29. As we've explained, it was not error to apply the physical-restraint enhancement to that count, and White raises no other argument why the adjusted offense level of 29 should otherwise be reduced.

Without a change to that offense level, White's Guidelines calculation remains the same, as does the resulting advisory sentencing range applicable to all four counts. Therefore, White cannot show that the single enhancement error prejudiced him, and there is no need to remand for

resentencing because of this error. *See United States v. Thomas*, 897 F.3d 807, 817 (7th Cir. 2018) (declining to remand for resentencing on plain-error review where "a two-level error in the offense level would not have changed the final recommended guideline range").

Although the enhancement error does not *entitle* White to a new sentence on all four counts of conviction, the judge *may*, in her discretion, reevaluate and restructure White's overall sentence when she corrects the sentencing error on the § 371 bank-robbery conspiracy count. Accordingly, we VACATE White's sentence and REMAND for resentencing.